Case 1:02-cv-01278-FMA Document 76-4 Filed 06/08/2005 Page 1 of 11



ass or group, numerous in quantity, ually accounted for only on a total llar or quantity basis, with respect which separate identification is impracticable, and placed in service in same taxable year.

(viii) Any other change in depreciation or amortization as the Secretary may designate by publication in the FEDERAL REGISTER or in the Internal Revenue Bulletin (see §601.601(d)(2) of this chapter).

(3) *Changes in depreciation or amortization that are not a change in method of accounting*—(i) *Useful life.* An adjustment in the useful life of a depreciable or amortizable asset for which depreciation is determined under section 167 (other than under section 168, section 1400I, section 1400L, or former section 168) is not a change in method of accounting. This adjustment in useful life is corrected by adjustments in the taxable year in which the conditions known to exist at the end of that taxable year changed thereby resulting in a redetermination of the useful life under §1.167(a)–1(b) (or if the period of limitation for assessment under section 6501(a) has expired for that taxable year, in the first succeeding taxable year open under the period of limitation for assessment), and in subsequent taxable years. In other situations, the adjustment in useful life may be corrected by adjustments in the earliest taxable year open under the period of limitation for assessment under section 6501(a) or the earliest taxable year under examination by the Internal Revenue Service (IRS) but in no event earlier than the placed-in-service year of the asset, and in subsequent taxable years. However, if a taxpayer initiates the correction in useful life, in lieu of filing amended Federal tax returns (for example, because the conditions known to exist at the end of a prior taxable year changed thereby resulting in a redetermination of the useful life under §1.167(a)–1(b)), the taxpayer may correct the adjustment in useful life by adjustments in the current and subsequent taxable years. This paragraph (e)(2)(ii)(*d*)(*3*)(*i*) does not apply if a taxpayer is changing to or from a useful life (or recovery period or amortization period) that is specifically assigned by the Internal Revenue Code (for example, section 167(f)(1), section 168(c), section 197), the regulations under the Code, or other guidance published in the Internal Revenue Bulletin and, therefore, such change is a change in method of accounting (unless paragraph (e)(2)(ii)(*d*)(*3*)(*v*) of this section applies).

(ii) *Change in use.* A change in computing depreciation or amortization allowances in the taxable year in which the use of an asset changes in the hands of the same taxpayer is not a change in method of accounting.

(iii) *Elections.* Generally, the making of a late depreciation or amortization election or the revocation of a timely valid depreciation or amortization election is not a change in method of accounting, except as otherwise expressly provided by the Internal Revenue Code, the regulations under the Code, or other guidance published in the Internal Revenue Bulletin. This paragraph (e)(2)(ii)(*d*)(*3*)(*iii*) also applies to making a late election or revoking a timely valid election made under section 13261(g)(2) or (3) of the Revenue Reconciliation Act of 1993 (107 Stat. 312, 540) (relating to amortizable section 197 intangibles). A taxpayer may request consent to make a late election or revoke a timely valid election by submitting a request for a private letter ruling.

(iv) *Salvage value.* Except as provided under paragraph (e)(2)(ii)(*d*)(*2*)(*v*) of this section, a change in salvage value of a depreciable or amortizable asset is not treated as a change in method of accounting.

(v) *Placed-in-service date.* Any change in the placed-in-service date of a depreciable or amortizable asset is not treated as a change in method of accounting. The change in placed-in-service date may be corrected by adjustments in the earliest taxable year open under the period of limitation for assessment under section 6501(a) or the earliest taxable year under examination by the IRS but in no event earlier than the placed-in-service year of the asset, and in subsequent taxable years. However, if a taxpayer initiates the change in placed-in-service date, in lieu of filing





amended federal tax returns, the taxpayer may correct the placed-in-service date by adjustments in the current and subsequent taxable years.

(vi) Any other change in depreciation or amortization as the Secretary may designate by publication in the FEDERAL REGISTER or in the Internal Revenue Bulletin (*see* §601.601(d)(2) of this chapter).

(*4*) *Item being changed.* For purposes of a change in depreciation or amortization to which this paragraph (e)(2)(ii)(*d*) applies, the item being changed generally is the depreciation treatment of each individual depreciable or amortizable asset. However, the item is the depreciation treatment of each vintage account with respect to a depreciable asset for which depreciation is determined under §1.167(a)–11 (CLADR property). Further, a change in computing depreciation or amortization under section 167 (other than under section 168, section 1400I, section 1400L, or former section 168) is permitted only with respect to all assets in a particular account (as defined in §1.167(a)–7) or vintage account.

(*5*) *Special rules.* For purposes of a change in depreciation or amortization to which this paragraph (e)(2)(ii)(*d*) applies—

(*i*) *Declining balance method to the straight line method for MACRS property.* For tangible, depreciable property subject to section 168 (MACRS property) that is depreciated using the 200-percent or 150-percent declining balance method of depreciation under section 168(b)(1) or (2), a taxpayer may change without the consent of the Commissioner from the declining balance method of depreciation to the straight line method of depreciation in the first taxable year in which the use of the straight line method with respect to the adjusted depreciable basis of the MACRS property as of the beginning of that year will yield a depreciation allowance that is greater than the depreciation allowance yielded by the use of the declining balance method. When the change is made, the adjusted depreciable basis of the MACRS property as of the beginning of the taxable year is recovered through annual depreciation allowances over the remaining recovery period (for further guidance, *see* section 6.06 of Rev. Proc. 87–57 (1987–2 C.B. 687) and §601.601(d)(2)(ii)(*b*) of this chapter).

(*ii*) *Depreciation method changes for section 167 property.* For a depreciable or amortizable asset for which depreciation is determined under section 167 (other than under section 168, section 1400I, section 1400L, or former section 168), see §1.167(e)–1T(b), (c), and (d) for the changes in depreciation method that are permitted to be made without the consent of the Commissioner. For CLADR property, see §1.167(a)–11(c)(1)(iii) for the changes in depreciation method for CLADR property that are permitted to be made without the consent of the Commissioner. Further, *see* §1.167(a)–11(b)(4)(iii)(*c*) for how to correct an incorrect classification or characterization of CLADR property.

(*iii*) *Section 481 adjustment.* Except as otherwise expressly provided by the Internal Revenue Code, the regulations under the Code, or other guidance published in the Internal Revenue Bulletin, no section 481 adjustment is required or permitted for a change from one permissible method of computing depreciation or amortization to another permissible method of computing depreciation or amortization for an asset because this change is implemented by either a cut-off method (for further guidance, see section 2.06 of Rev. Proc. 97–27 (1997–1 C.B. 680), section 2.06 of Rev. Proc. 2002–9 (2002–1 C.B. 327), and §601.601(d)(2)(ii)(*b*) of this chapter) or a modified cut-off method (under which the adjusted depreciable basis of the asset as of the beginning of the year of change is recovered using the new permissible method of accounting), as appropriate. However, a change from an impermissible method of computing depreciation or amortization to a permissible method of computing depreciation or amortization for an asset results in a section 481 adjustment. Similarly, a change in the treatment of an asset from nondepreciable or nonamortizable to depreciable or amortizable (or vice versa) or a change in the treatment of an asset from expensing to depreciating (or vice versa) results in a section 481 adjustment.

(iii) *Examples.* The rules of this paragraph (e) are illustrated by the following examples:

Case 1:02-cv-01278-FMA Document 76-4 Filed 06/08/2005 Page 2 of 11

*Example 1.* Although the sale of merchan-se is an income producing factor, and erefore inventories are required, a tax-yer in the retail jewelry business reports s income on the cash receipts and disburse-ents method of accounting. A change from e cash receipts and disbursements method accounting to the accrual method of ac-unting is a change in the overall plan of counting and thus is a change in method of counting.

*ample 2.* A taxpayer in the wholesale dry ds business computes its income and ex-nses on the accrual method of accounting d files its Federal income tax returns on ch basis except for real estate taxes which ve been reported on the cash receipts and sbursements method of accounting. A ange in the treatment of real estate taxes m the cash receipts and disbursements thod to the accrual method is a change in thod of accounting because such change is ange in the treatment of a material item hin his overall accounting practice.

*ample 3.* A taxpayer in the wholesale dry ds business computes its income and ex-nses on the accrual method of accounting d files its Federal income tax returns on ch basis. Vacation pay has been deducted the year in which paid because the tax-er did not have a completely vested vaca-n pay plan, and, therefore, the liability payment did not accrue until that year. bsequently, the taxpayer adopts a com-etely vested vacation pay plan that anges its year for accruing the deduction m the year in which payment is made to e year in which the liability to make the ment now arises. The change for the year deduction of the vacation pay plan is not change in method of accounting but re-lts, instead, because the underlying facts hat is, the type of vacation pay plan) have anged.

*ample 4.* From 1968 through 1970, a tax-yer has fairly allocated indirect overhead sts to the value of inventories on a fixed rcentage of direct costs. If the ratio of in-ect overhead costs to direct costs in-eases in 1971, a change in the underlying ts has occurred. Accordingly, an increase the percentage in 1971 to fairly reflect the crease in the relative level of indirect rhead costs is not a change in method of ounting but is a change in treatment re-lting from a change in the underlying ts.

*ample 5.* A taxpayer values inventories at st. A change in the basis for valuation of ventories from cost to the lower of cost or arket is a change in an overall practice of luing items in inventory. The change, erefore, is a change in method of account-g for inventories.

*Example 6.* A taxpayer in the manufac-ring business has for many taxable years lued its inventories at cost. However, cost has been improperly computed since no overhead costs have been included in valuing the inventories at cost. The failure to allocate an appropriate portion of overhead to the value of inventories is contrary to the requirement of the Internal Revenue Code and the regulations under the Code. A change requiring appropriate allocation of overhead is a change in method of accounting because it involves a change in the treatment of a material item used in the overall practice of identifying or valuing items in inventory.

*Example 7.* A taxpayer has for many taxable years valued certain inventories by a method which provides for deducting 20 percent of the cost of the inventory items in determining the final inventory valuation. The 20 percent adjustment is taken as a "reserve for price changes." Although this method is not a proper method of valuing inventories under the Internal Revenue Code or the regulations under the Code, it involves the treatment of a material item used in the overall practice of valuing inventory. A change in such practice or procedure is a change of method of accounting for inventories.

*Example 8.* A taxpayer has always used a base stock system of accounting for inventories. Under this system a constant price is applied to an assumed constant normal quantity of goods in stock. The base stock system is an overall plan of accounting for inventories which is not recognized as a proper method of accounting for inventories under the regulations. A change in this practice is, nevertheless, a change of method of accounting for inventories.

*Example 9.* In 2000, A1, a calendar year taxpayer engaged in the trade or business of manufacturing knitted goods, purchased and placed in service a building and its components at a total cost of $10,000,000 for use in its manufacturing operations. A1 classified the $10,000,000 as nonresidential real property under section 168(e). A1 did not make any elections under section 168 on its 2000 Federal tax return. As a result, on its 2000, 2001, and 2002 federal tax returns, A1 depreciated the $10,000,000 under the general depreciation system of section 168(a), using the straight line method of depreciation, a 39-year recovery period, and the mid-month convention. In 2003, A1 completes a cost segregation study on the building and its components and identifies items that cost a total of $1,500,000 as section 1245 property. As a result, the $1,500,000 should have been classified in 2000 as 5-year property under section 168(e) and depreciated on A1's 2000, 2001, and 2002 Federal tax returns under the general depreciation system, using the 200-percent declining balance method of depreciation, a 5-year recovery period, and the half-year convention. Pursuant to paragraph (e)(2)(ii)(*d*)(*2*)(*i*) of this section, A1's change to this depreciation method, recovery period,





and convention is a change in method of accounting. This method change results in a section 481 adjustment. The useful life exception under paragraph (e)(2)(ii)(*d*)(*3*)(*i*) of this section does not apply because the assets are depreciated under section 168.

*Example 10.* In 1996, B, a calendar year taxpayer, purchased and placed in service new equipment at a total cost of $1,000,000 for use in its plant located outside the United States. The equipment is 15-year property under section 168(e) with a class life of 20 years. The equipment is required to be depreciated under the alternative depreciation system of section 168(g). However, B incorrectly depreciated the equipment under the general depreciation system of section 168(a), using the 150-percent declining balance method, a 15-year recovery period, and the half-year convention. In 2003, the IRS examines B's 2000 Federal income tax return and changes the depreciation of the equipment to the alternative depreciation system, using the straight line method of depreciation, a 20-year recovery period, and the half-year convention. Pursuant to paragraph (e)(2)(ii)(*d*)(*2*)(*i*) of this section, this change in depreciation method and recovery period made by the IRS is a change in method of accounting. This method change results in a section 481 adjustment. The useful life exception under paragraph (e)(2)(ii)(*d*)(*3*)(*i*) of this section does not apply because the assets are depreciated under section 168.

*Example 11.* In May 2001, C, a calendar year taxpayer, purchased and placed in service equipment for use in its trade or business. C never held this equipment for sale. However, C incorrectly treated the equipment as inventory on its 2001 and 2002 Federal tax returns. In 2003, C realizes that the equipment should have been treated as a depreciable asset. Pursuant to paragraph (e)(2)(ii)(*d*)(*2*) of this section, C's change in the treatment of the equipment from inventory to a depreciable asset is a change in method of accounting. This method change results in a section 481 adjustment.

*Example 12.* Since 2001, D, a calendar year taxpayer, has used the distribution fee period method to amortize distributor commissions and, under that method, established pools to account for the distributor commissions (for further guidance, see Rev. Proc. 2000–38 (2000–2 C.B. 310) and § 601.601(d)(2)(ii)(*b*) of this chapter). A change in the accounting of distributor commissions under the distribution fee period method from pooling to single asset accounting is a change in method of accounting pursuant to paragraph (e)(2)(ii)(*d*)(*2*)(*vi*) of this section. This method change results in no section 481 adjustment because the change is from one permissible method to another permissible method.

*Example 13.* Since 2000, E, a calendar year taxpayer, has accounted for items of MACRS property that are mass assets in pools. Each pool includes only the mass assets that are placed in service by E in the same taxable year. E is able to identify the cost basis of each asset in each pool. None of the pools are general asset accounts under section 168(i)(4) and the regulations under section 168(i)(4). E identified any dispositions of these mass assets by specific identification. Because of changes in E's recordkeeping in 2003, it is impracticable for E to continue to identify disposed mass assets using specific identification. As a result, E wants to change to a first-in, first-out method under which the mass assets disposed of in a taxable year are deemed to be from the pool with the earliest placed-in-service year in existence as of the beginning of the taxable year of each disposition. Pursuant to paragraph (e)(2)(ii)(*d*)(*2*)(*vii*) of this section, this change is a change in method of accounting. This method change results in no section 481 adjustment because the change is from one permissible method to another permissible method.

*Example 14.* In August 2001, F, a calendar taxpayer, purchased and placed in service a copier for use in its trade or business. F incorrectly classified the copier as 7-year property under section 168(e). F made no elections under section 168 on its 2001 Federal tax return. As a result, on its 2001 and 2002 Federal tax returns, F depreciated the copier under the general depreciation system of section 168(a), using the 200-percent declining balance method of depreciation, a 7-year recovery period, and the half-year convention. In 2003, F realizes that the copier is 5-year property and should have been depreciated on its 2001 and 2002 Federal tax returns under the general depreciation system using a 5-year recovery period rather than a 7-year recovery period. Pursuant to paragraph (e)(2)(ii)(*d*)(*2*)(*i*) of this section, F's change in recovery period from 7 to 5 years is a change in method of accounting. This method change results in a section 481 adjustment. The useful life exception under paragraph (e)(2)(ii)(*d*)(*3*)(*i*) of this section does not apply because the copier is depreciated under section 168.

*Example 15.* In 1998, G, a calendar year taxpayer, purchased and placed in service an intangible asset that is not an amortizable section 197 intangible and that is not described in section 167(f). G amortized the cost of the intangible asset under section 167(a) using the straight line method of depreciation and a useful life of 13 years. In 2003, because of changing conditions, G changes the remaining useful life of the intangible asset to 2 years. Pursuant to paragraph (e)(2)(ii)(*d*)(*3*)(*i*) of this section, G's change in useful life is not a change in method of accounting because the intangible asset is depreciated under section 167 and G is not changing to or

om a useful life that is specifically assigned by the Internal Revenue Code, the gulations under the Code, or other guidance published in the Internal Revenue Bulletin.

*Example 16*. In July 2001, H, a calendar year taxpayer, purchased and placed in service "off-the-shelf" computer software and a new computer. The cost of the new computer and computer software are separately stated. H correctly included the cost of this software part of the cost of the computer, which is year property under section 168(e). On its Federal tax return, H elected to depreciate its 5-year property placed in service in 01 under the alternative depreciation system of section 168(g). The class life for a computer is 5 years. As a result, because H cluded the cost of the computer software part of the cost of the computer hardware, depreciated the cost of the software under alternative depreciation system, using straight line method of depreciation, a 5-year recovery period, and the half-year convention. In 2003, H realizes that the cost of software should have been amortized under section 167(f)(1), using the straight line method of depreciation, a 36-month useful e, and a monthly convention. H's change om 5-years to 36-months is a change in method of accounting because H is changing a useful life that is specifically assigned section 167(f)(1). The change in convention om the half-year to the monthly convention also is a change in method of accounting. Both changes result in a section 481 adjustment.

*Example 17*. On September 15, 2001, I2, a calendar year taxpayer, purchased and placed in service new equipment at a total cost of 00,000 for use in its business. The equipment is 5-year property under section 168(e) th a class life of 9 years and is qualified property under section 168(k). I2 did not place in service any other depreciable property in 2001. Section 168(g)(1)(A) through (D) not apply to the equipment. I2 intended to ect the alternative depreciation system der section 168(g) for 5-year property placed in service in 2001. However, I2 did not make the election. Instead, I2 deducted on 2001 Federal tax return the 30-percent additional first year depreciation attributable the equipment and, on its 2001 and 2002 Federal tax returns, depreciated the remaining adjusted depreciable basis of the equipment under the general depreciation system der 168(a), using the 200-percent declining balance method, a 5-year recovery period, d the half-year convention. In 2003, I2 realizes its failure to make the alternative depreciation system election in 2001 and files a rm 3115 to change its method of depreciating the remaining adjusted depreciable sis of the 2001 equipment to the alternative depreciation system. Because this uipment is not required to be depreciated under the alternative depreciation system, I2 is attempting to make an election under section 168(g)(7). However, this election must be made in the taxable year in which the equipment is placed in service (2001) and, consequently, I2 is attempting to make a late election under section 168(g)(7). Accordingly, I2's change to the alternative depreciation system is not a change in accounting method pursuant to paragraph (e)(2)(ii)(*d*)(*3*)(*iii*) of this section. Instead, I2 must submit a request for a private letter ruling under §301.9100–3 of this chapter, requesting an extension of time to make the alternative depreciation system election on its 2001 Federal tax return.

(3) [Reserved]. For further guidance, see §1.446–1(e)(3).

(4) *Effective date*—(i) *In general*. Except as provided in paragraphs (e)(3)(iii) and (e)(4)(ii) of this section, paragraph (e) of this section applies on or after December 30, 2003. For the applicability of regulations before December 30, 2003, *see* §1.446–1(e) in effect prior to December 30, 2003 (§1.446–1(e) as contained in 26 CFR part 1 edition revised as of April 1, 2003).

(ii) *Changes involving depreciable or amortizable assets*. With respect to paragraph (e)(2)(ii)(*d*) of this section, paragraph (e)(2)(iii) *Examples 9* through *17* of this section, the addition of the language "certain changes in computing depreciation or amortization (see paragraph (e)(2)(ii)(*d*) of this section)" to the last sentence of paragraph (e)(2)(ii)(*a*) of this section, and the removal of all language regarding useful life and the sentence "On the other hand, a correction to require depreciation in lieu of a deduction for the cost of a class of depreciable assets which had been consistently treated as an expense in the year of purchase involves the question of the proper timing of an item, and is to be treated as a change in method of accounting" from paragraph (e)(2)(ii)(*b*) of this section—

(A) For any change in depreciation or amortization that is a change in method of accounting, this section applies to such a change in method of accounting made for taxable years ending on or after December 30, 2003; and

(B) For any change in depreciation or amortization that is not a change in method of accounting, this section applies to such a change made for taxable years ending on or after December 30, 2003.





(iii) The applicability of paragraph (e) of this section expires on or before December 29, 2006.

[T.D. 9105, 69 FR 8, Jan. 2, 2004; 69 FR 5273, Feb. 4, 2004]

**§1.446–2 Method of accounting for interest.**

(a) *Applicability*—(1) *In general*. This section provides rules for determining the amount of interest that accrues during an accrual period (other than interest described in paragraph (a)(2) of this section) and for determining the portion of a payment that consists of accrued interest. For purposes of this section, interest includes original issue discount and amounts treated as interest (whether stated or unstated) in any lending or deferred payment transaction. Accrued interest determined under this section is taken into account by a taxpayer under the taxpayer's regular method of accounting (e.g., an accrual method or the cash receipts and disbursements method). Application of an exception described in paragraph (a)(2) of this section to one party to a transaction does not affect the application of this section to any other party to the transaction.

(2) *Exceptions*—(i) *Interest included or deducted under certain other provisions*. This section does not apply to interest that is taken into account under—

(A) Sections 1272(a), 1275, and 163(e) (income and deductions relating to original issue discount);

(B) Section 467(a)(2) (certain payments for the use of property or services);

(C) Sections 1276 through 1278 (market discount);

(D) Sections 1281 through 1283 (discount on certain short-term obligations);

(E) Section 7872(a) (certain loans with below-market interest rates); or

(F) Section 1.1272–3 (an election by a holder to treat all interest on a debt instrument as original issue discount).

(ii) *De minimis original issue discount*. This section does not apply to de minimis original issue discount (other than de minimis original issue discount treated as qualified stated interest) as determined under §1.1273–1(d). See §1.163–7 for the treatment of de minimis original issue discount by the issuer and §§1.1273–1(d) and 1.1272–3 for the treatment of de minimis original issue discount by the holder.

(b) *Accrual of qualified stated interest*. Qualified stated interest (as defined in §1.1273–1(c)) accrues ratably over the accrual period (or periods) to which it is attributable and accrues at the stated rate for the period (or periods).

(c) *Accrual of interest other than qualified stated interest*. Subject to the modifications in paragraph (d) of this section, the amount of interest (other than qualified stated interest) that accrues for any accrual period is determined under rules similar to those in the regulations under sections 1272 and 1275 for the accrual of original issue discount. The preceding sentence applies regardless of any contrary formula agreed to by the parties.

(d) *Modifications*—(1) *Issue price*. The issue price of the loan or contract is equal to—

(i) In the case of a contract for the sale or exchange of property to which section 483 applies, the amount described in §1.483–2(a)(1)(i) or (ii), whichever is applicable;

(ii) In the case of a contract for the sale or exchange of property to which section 483 does not apply, the stated principal amount; or

(iii) In any other case, the amount loaned.

(2) *Principal payments that are not deferred payments*. In the case of a contract to which section 483 applies, principal payments that are not deferred payments are ignored for purposes of determining yield and adjusted issue price.

(e) *Allocation of interest to payments*—(1) *In general*. Except as provided in paragraphs (e)(2), (e)(3), and (e)(4) of this section, each payment under a loan (other than payments of additional interest or similar charges provided with respect to amounts that are not paid when due) is treated as a payment of interest to the extent of the accrued and unpaid interest determined under paragraphs (b) and (c) of this section as of the date the payment becomes due.

(2) *Special rule for points deductible under section 461(g)(2)*. If a payment of points is deductible by the borrower under section 461(g)(2), the payment is

*axable*
. . . . . $100

. . . . . (80)
. . . . . 20

to loss on the dispo-
ıd S has a capital loss
he capital loss, S has
January 1, 1969, the
, $400. On December
ıf the stock of S for

idated taxable income
tal gain *(capital gain*
*years beginning after*
$40, and (2) a net op-
l of which is attribut-

2(b) and (e) and sub-
s paragraph, there is
ment to the basis of
negative adjustment
and a positive adjust-
ortion of the consoli-
oss attributable to S,
ried back to a prior
adjusted basis of the
realizes a loss of $160

taxable income for 1969

. . . . . . ($120)

. . . . . . (200)
. . . . . . (200)

are apportioned to S
d (b) and may be car-
eparate return year of

-66; amended by TD
0-80; TD 7876, filed
has been 1 Proposed
Amendments to Reg-

o the following modifi-

etween members and
ect to stock, bonds, or

©1991 Macmillan, Inc.



other obligations of members shall be reflected according to the provisions of §§1.1502-13 and 1.1502-14;

(b) Any deduction which is disallowed under §1.1502-15 shall be taken into account as provided in that section;

(c) The limitation on deductions provided in section 615(c) or section 617(h) shall be taken into account as provided in §1.1502-16;

(d) The method of accounting under which such computation is made and the adjustments to be made because of any change in method of accounting shall be determined under §1.1502-17;

(e) Inventory adjustments shall be made as provided in §1.1502-18;

(f) Any amount included in income under §1.1502-19 shall be taken into account;

(g) In the computation of the deduction under section 167, property shall not lose its character as new property as a result of a transfer from one member to another member during a consolidated return year if—

(1) The transfer occurs on or before January 4, 1973, or

(2) The transfer occurs after January 4, 1973, and the transfer is a deferred intercompany transaction as defined in §1.1502-13(a)(2) or the basis of the property in the hands of the transferee is determined (in whole or in part) by reference to its basis in the hands of the transferor;

(h) No net operating loss deduction shall be taken into account;

(i) [Reserved]

(j) No capital gains or losses shall be taken into account;

(k) No gains and losses subject to section 1231 shall be taken into account;

(l) No deduction under section 170 with respect to charitable contributions shall be taken into account;

(m) No deduction under section 922 (relating to the deduction for Western Hemisphere trade corporations) shall be taken into account; and

(n) No deductions under section 243(a)(1), 244(a), 245, or 247 (relating to deductions with respect to dividends received and dividends paid) shall be taken into account;

(o) Basis shall be determined under §§1.1502-31 and 1.1502-32, and earnings and profits shall be determined under §1.1502-33; and

(p) The limitation on deductions provided in section 613A shall be taken into account for each member's oil and gas properties as provided in §1.1502-44.

(q) A thrift institution's deduction under section 593(b)(2) (relating to the addition to the reserve for bad debts of a thrift institution under the percentage of taxable income method) shall be determined under §1.1502-42.

The term "separate taxable income" shall include a case in which the determination under this section results in an excess of deductions over gross income.

(r) [1] For rules relating to loss disallowance or basis reduction on the disposition or deconsolidation of stock of a subsidiary, see [2]*§§1.337(d)-1 and 1.337(d)-2T.*

**Reg. §1.1502-13 Intercompany transactions.** (TD 6894, filed 9-7-66; amended by TD 7246, filed 12-29-72; TD 8131, filed 3-24-87; TD 8196; filed 4-14-88; TD 8295, filed 3-9-90.)

**(a) Definitions.** For purposes of §§1.1502-1 through 1.1502-80—

**(1) "Intercompany transaction".** (i) Except as provided in subdivision (ii) of this subparagraph, the term "intercompany transaction" means a transaction during a consolidated return year between corporations which are members of the same group immediately after such transaction. Thus, for example, an intercompany transaction would include a sale of property by one member of a group (hereinafter referred to as the "selling member") to another member of the same group ("purchasing member"), the performance of services by one member of a group ("selling member") for another member of the same group ("purchasing member"), or the payment of interest by one member of a group ("purchasing member") to another member of the same group ("selling member"), during a consolidated return year.

(ii) The term "intercompany transaction" does not include a distribution by one member of a group to another member of the same group with respect to the distributing member's stock, or a contribution to capital on which no gain is realized. Thus, for example, dividend distributions, redemptions, and liquidations are not intercompany transactions. The term also does not include sales and other dispositions of, and bad debts with respect to, obligations of other members of the group. See §1.1502-14, relating to amounts received with respect to stock, bonds, or other obligations of a member of the group.

**(2) "Deferred Intercompany transaction".** The term "deferred intercompany transaction" means—

(i) The sale or exchange of property,

(ii) The performance of services in a case where the amount of the expenditure for such services is capitalized (for example, a

**[Footnote Reg. §1.1502-12]** Matter in *italics* added by TD 8319, which struck out:

**(1)** **"Cross reference to temporary regulations."**

**(2)** "§§1.337(d)-1T and 1.1502-20T"

©1991 Macmillan, Inc.

builder's fee, architect's fee, or other similar cost which is included in the basis of property), or

(iii) Any other expenditure in a case where the amount of the expenditure is capitalized (for example, prepaid rent, or interest which is included in the basis of property);

in an intercompany transaction.

(b) **Treatment of intercompany transactions other than deferred intercompany transactions—(1) General rule.** Gain or loss on intercompany transactions (other than deferred intercompany transactions) shall not be deferred or eliminated. Thus, for example, if, during a consolidated return year, a purchasing member makes an interest payment on an indebtedness to a selling member in an intercompany transaction, the purchasing member shall take the deduction for interest into account and the selling member shall take the interest income into account.

(2) **Special rule.** If, in an intercompany transaction (other than a deferred intercompany transaction), one member would otherwise properly take an item of income or a deduction into account for a consolidated return year earlier than the year (whether consolidated or separate) for which another member of the group can properly take into account the corresponding item of income or deduction, then both the item of income and the deduction shall be taken into account for the later year (whether consolidated or separate). On the other hand, if one member properly takes an item of income or a deduction into account for a separate return year earlier than the consolidated return year for which the other member can properly take into account the corresponding item of income or deduction, then such other member shall take the corresponding deduction or item of income into account for such later consolidated return year.

(c) **Deferral of gain or loss on deferred intercompany transactions—(1) General rule.** (i) To the extent gain or loss on a deferred intercompany transaction is recognized under the Code for a consolidated return year, such gain or loss shall be deferred by the selling member (hereinafter referred to as "deferred gain or loss").

(ii) The following rules apply with respect to the deferral of gain or loss on deferred intercompany transactions:

(a) The selling member may not report gain on the installment method under section 453;

(b) A selling member shall take into account the gain or loss on a deferred intercompany transaction in accordance with the provisions of paragraphs (d), (e), and (f) of this section, notwithstanding that such selling member, under its method of accounting, would not otherwise recognize such gain or loss until a later taxable year. Thus, for example, a selling member must take into account its gain on a deferred intercompany transaction for the first taxable year for which the purchasing member is allowed a deduction for depreciation with respect of the property involved, even though the selling member, under its method of accounting, would not otherwise recognize such gain until a later taxable year.

(iii) See paragraphs (d), (e), and (f) of this section, relating to the time and manner of restoring deferred gain or loss. See paragraph (a) of §1.1502-31, relating to basis of property acquired in a deferred intercompany transaction. *See §1.1502-13T, relating to the time and manner of restoring deferred gain or loss in taxable years for which the due date (without extensions) of the income tax return is after March 14, 1990.*

(2) **Determination of amount of deferred gain or loss.** In determining the amount of deferred gain or loss, the cost of property, services or any other expenditure shall include both direct costs and indirect costs which are properly includible in the cost of goods sold or cost of the services or other expenditure. See section 1.263A-1T for costs properly includible in cost of goods sold.

(3) **Election not to defer.** A group may elect with the consent of the Commissioner not to defer gain or loss on any deferred intercompany transactions with respect to all property or any class or classes of property. Applications for such consent must be filed with the Commissioner of Internal Revenue, Washington, D.C. 20224, on or before the due date of the consolidated return (not including extensions of time) for the taxable year to which the election is to apply. An election under this subparagraph shall, unless revoked with the consent of the Commissioner, apply to all members of the group for the consolidated return year for which made and all subsequent consolidated return years ending prior to the first year for which such group does not file a consolidated return.

(4) **Character and source of deferred gain or loss.** (i) Except as provided in subdivision (ii) of this subparagraph, the character and source of deferred gain or loss on a deferred intercompany transaction shall be determined at the time of the deferred intercompany transaction as if such transaction had not occurred during a consolidated return year.

(ii) Deferred gain or loss taken into account by the selling member under paragraph (d)(1) of this section, or (as a result of abandonment) under paragraph (f) of this section, shall be treated as ordinary income or loss.

(5) **Accounting for deferred gain or loss.** The amount of deferred gain or loss shall be reflected on permanent records (including work papers). From such permanent

[Footnote Reg. §1.1502-13] Matter in *italics* added by TD 8295.



©1991 Macmillan, Inc.

records the group must be able to identify the character and source of the deferred gain or loss to the selling member, and must be able to apply the restoration rules of paragraphs (d), (e), and (f) of this section.

(6) **Inheritance of deferred gain or loss.** If the assets of a selling member are acquired by one or more other members in an acquisition to which section 381(a) applies, the member acquiring the greatest portion of the assets (measured by fair market value) of the selling member shall be subject to the provisions of paragraphs (d), (e), and (f) of this section with respect to the entire remaining balance of the deferred gain or loss. If two or more members acquire the same portion (which is greater than that acquired by any other members), the common parent shall select which such member shall be subject to the provisions of paragraphs (d), (e), and (f) of this section. For purposes of this section, a member which inherits the balance of the deferred gain or loss under this subparagraph shall be treated as the selling member.

(7) **Cross reference to temporary regulations.** For rules relating to inheritance of deferred gain or loss in the case of acquisitions in taxable years for which the due date (without extensions) of the income tax return is after April 14, 1988, see §1.1502-13T(c).

(d) **Restoration of deferred gain or loss for property subject to depreciation, amortization, or depletion—(1) General rule.** (i) If property (including a capitalized expenditure for services, or any other capitalized expenditure) acquired in a deferred intercompany transaction is, in the hands of any member of the group, subject to depreciation, amortization, or depletion, then, for each taxable year (whether consolidated or separate) for which a depreciation, amortization, or depletion deduction is allowed to any member of the group with respect to such property, a portion (as determined under subdivision (ii) of this subparagraph) of the deferred gain or loss attributable to such property shall be taken into account by the selling member.

(ii) The portion of the deferred gain or loss attributable to any property which shall be taken into account by the selling member shall be an amount equal to—

(a) The amount of gain or loss deferred by the selling member at the time of the deferred intercompany transaction (and if a member has transferred the property to another member of the group, the remaining balance at the time of such transfer), multiplied by

(b) A fraction, the numerator of which is the amount of the depreciation, amortization, or depletion deduction with respect to such property allowed to any member of the group for the year (whether consolidated or separate), and the denominator of which is the depreciable basis (i.e., basis reduced by salvage value required to be taken into account, if any) of such property in the hands of such member immediately after such property was transferred to such member.

(2) **Multiple asset accounts.** In the case of property contained in a multiple asset account (or in single asset accounts for which an average rate is used), for purposes of subparagraph (1)(ii)(b) of this paragraph, the depreciation deduction allowed for a particular taxable year shall be determined by reference to the rate and method of depreciation applied to such multiple asset account (or average rate and method of depreciation applied to such single asset accounts). Thus, if property with an estimated useful life of 3 years is placed in a multiple asset account which is depreciated on the straight-line method at a rate of 20 percent, the depreciation deduction allowed for each taxable year shall be assumed to be 20 percent of the basis of such property (reduced by the salvage value taken into account).

(3) **Reduction of deferred gain or loss.** The deferred gain or loss shall be reduced by the amount taken into account by the selling member under subparagraph (1) of this paragraph. If the deferred gain includes any ordinary income, the reduction shall first be applied against the ordinary income. Thus, for example, if the selling member has deferred gain of $100, of which $70 is capital gain and $30 is ordinary income, the first $30 taken into account by the selling member under subparagraph (1) of this paragraph shall be applied against the ordinary income, and any additional amounts so taken into account shall be applied against the capital gain.

(e) **Restoration of deferred gain or loss installment obligations and sales—(1) Installment obligations.** If an installment obligation (within the meaning of section 453(d)) is transferred in a deferred intercompany transaction, then on each date on which the obligation is satisfied the selling member shall take into account an amount equal to the deferred gain or loss on such transfer, multiplied by a fraction, the numerator of which is the portion of such obligation satisfied on such date, and the denominator of which is the aggregate unpaid installments immediately after the deferred intercompany transaction.

(2) **Installment sales.** If—

(i) Property acquired in a deferred intercompany transaction is disposed of outside the group, and

(ii) The purchasing member-vendor reports its income on the installment method under section 453,

then on each date on which the purchasing member-vendor receives an installment payment the selling member shall take into account an amount equal to the deferred gain or loss attributable to such property (after taking into account any prior reductions under paragraph (d)(3) of this section) multiplied by a fraction, the numerator of

©1991 Macmillan, Inc.

which is the installment payment received and the denominator of which is the total contract price. If the deferred gain includes any ordinary income, the ordinary income shall be taken into account first.

(3) **Reduction of deferred gain or loss.** The deferred gain or loss shall be reduced by the amount taken into account by the selling member under subparagraph (1) or (2) of this paragraph. If the deferred gain includes any ordinary income, the reduction shall first be applied against the ordinary income.

(f) **Restoration of deferred gain or loss on dispositions, etc.** (1) **General rule.** The remaining balance (after taking into account any prior reductions under paragraphs (d)(3) and (e)(3) of this section) of the deferred gain or loss attributable to property, services, or other expenditure shall be taken into account by the selling member as of the earliest of the following dates:

(i) The date on which such property is dipsosed of outside the group (including abandoned) other than in a transaction described in paragraph (e)(2) of this section (but not including a normal retirement, as defined in paragraph (b) of §1.167(a)-8, from an average-life multiple asset account or from a single asset account for which an average rate is used). If such property is of a kind which would properly be included in the inventory of a member if on hand at the close of its taxable year, such member shall determine whether or not such item of property has been disposed of outside the group by reference to its method of inventory identification (e.g., first-in, first-out, last-in, first-out, or specific identification);

(ii) In the case of a transaction described in paragraph (e)(2) of this section, the date on which the installment debt is written off, satisfied, discharged, or disposed of outside the group or the property sold is repossessed (except as provided in section 1038), whichever occurs earliest;

(iii) Immediately preceding the time when either the selling member or the member which owns the property ceases to be a member of the group;

(iv) In the case of property which is stock in trade or other property of a kind which would be properly included in inventory of the member which owns the property if on hand at the close of such member's taxable year, or held primarily for sale to customers in the ordinary course of such member's trade or business, the first day of the first separate return year of the selling member or the member which owns the property;

(v) In the case of an obligation (other than an obligation of a member of the group), the date on which such obligation is satisfied or becomes worthless;

(vi) In the case of stock, the date on which such stock is redeemed (whether or not it is canceled, retired, or held as treasury stock) or becomes worthless;

(vii) If consolidated returns are filed by the group for fewer than three consecutive taxable years immediately preceding a separate return year of the common parent, the first day of such separate return year; or

(viii) In the case of inventory, the date on which its value is written down to market (if the lower-of-cost-or-market method is used by the purchaser), but only to the extent of such writedown.

(2) **Exceptions.** (i) Subparagraph (1) of this paragraph shall not apply solely because of a termination of the group (hereinafter referred to as the "terminating group") resulting from—

(a) The acquisition by a nonmember corporation of (1) the assets of the common parent in a reorganization described in subparagraph (A), (C), or (D) (but only if the requirements of subparagraphs (A) and (B) of section 354(b)(1) are met of section 368(a)(1), or (2) stock of the common parent, or

(b) The acquisition (in a transaction to which §1.1502-75(d)(3) applies) by a member of (1) the assets of a nonmember corporation in a reorganization referred to in subdivision (a), or (2) stock of a nonmember corporation,

if all the members of the terminating group (other than such common parent if its assets are acquired) immediately before the acquisition are members immediately after the acquisition of another group (hereinafter referred to as the "succeeding group") which files a consolidated return for the first taxable year ending after the date of acquisition. The members of the succeeding group shall succeed to any deferred gain or loss of members of the terminating group and to the status of such members as selling or purchasing members. This subdivision shall not apply with respect to acquisitions occurring before August 25, 1971, except that in the case of an acquisition occurring after April 16, 1968, and before August 25, 1971, this subdivision shall apply if the terminating group and the succeeding group elect to apply §1.1502-18(c)(4) (notwithstanding the last sentence thereof) with respect to such acquisition. The election shall be made in a joint statement filed by the terminating and succeeding groups on or before March 5, 1973, with the Internal Revenue Service Center or Centers with which the terminating and succeeding groups filed their consolidated returns for the taxable year which includes the date of the acquisition. Such election shall be irrevocable.

(ii) Subparagraph (1)(iii) of this paragraph shall not apply in a case where—

(a) The selling member, or the member which owns the property, as the case may be, ceases to be a member of the group by reason of an acquisition to which section 381(a) applies, and the acquiring corporation is a member, or

(b) The group is terminated, and immediately after such termination the corporation which was the common parent (or cor-



©1991 Macmillan, Inc.



poration which was
affiliated group and ha
become the owner of su
assets of such former pa
erty involved and is th
is treated as the selling
agraph (c)(6) of this sec
and (e) of this section
shall apply to such sel
for example, subparag
paragraph does not ap
corporation P, the co
group consisting of P
and T, sells an asset to
tercompany transaction
all of the assets of S ar
complete liquidation of
the liquidation of S, P s
(1)(iii) of this paragrap
even though P ceases to
group.

(iii) See §1.1502-13T(
of an exception to parag
section.

(3) **Certain divesti**
to a final judgment or
court or an agency of th
government, any memb
required to divest then
any other member an
member ceases to be a
missioner may enter in
ment under section 71
Such closing agreemen
any deferred gain or lo
erwise be taken into acc
graph (1)(iii) of this par
be taken into account
period of time related t
within which the defe
have been taken into ac
titure not taken place,
10 years. Ordinarily, a
closing agreement will r
such divestiture is occas
tion after August 31, 1
corporation or of asset
any such application be
group establishes to th
Commissioner that the
liability attributable to
will not be jeopardized b

(g) **Holding perio**
the period for which a
has held property acq
intercompany transacti
property was held by
shall not be included.

(h) **Examples.** This
illustrated by the follow

**Example (1).** (i) Co
file consolidated returns
basis. On January 10,
which it has used in its

$2(

©1991 Macmillan, Inc.

ed returns are filed by
than three consecutive
iately preceding a sepa-
he common parent, the
rate return year; or
of inventory, the date
s written down to mar-
ost-or-market method is
er), but only to the ex-
m.

(i) Subparagraph (1)
all not apply solely be-
n of the group (herein-
e "terminating group")

n by a nonmember cor-
assets of the common
ation described in sub-
r (D) (but only if the
aragraphs (A) and (B)
are met of section
of the common parent,

n (in a transaction to
) applies) by a member
nonmember corporation
referred to in subdivi-
f a nonmember corpo-

the terminating group
non parent if its assets
ately before the acqui-
immediately after the
er group (hereinafter
ceeding group") which
turn for the first tax-
r the date of acquisi-
the succeeding group
deferred gain or loss of
inating group and to
members as selling or
This subdivision shall
to acquisitions occur-
, 1971, except that in
sition occurring after
efore August 25, 1971,
apply if the terminat-
ceeding group elect to
(notwithstanding the
with respect to such
on shall be made in a
y the terminating and
or before March 5,
nal Revenue Service
n which the terminat-
ups filed their consol-
taxable year which
the acquisition. Such
cable.
(1)(iii) of this para-
n a case where—
mber, or the member
rty, as the case may
nber of the group by
ion to which section
acquiring corporation

rminated, and imme-
nination the corpora-
nmon parent (or cor-

©1991 Macmillan, Inc.



poration which was a member of the affiliated group and has succeeded to and become the owner of substantially all of the assets of such former parent) owns the property involved and is the selling member or is treated as the selling member under paragraph (c)(6) of this section. Paragraphs (d) and (e) of this section and this paragraph shall apply to such selling member. Thus, for example, subparagraph (1)(iii) of this paragraph does not apply in a case where corporation P, the common parent of a group consisting of P and corporations S and T, sells an asset to S in a deferred intercompany transaction, and subsequently all of the assets of S are distributed to P in complete liquidation of S. Moreover, if, after the liquidation of S, P sold T, subparagraph (1)(iii) of this paragraph would not apply even though P ceases to be a member of the group.

(iii) See §1.1502-13T(f) for a modification of an exception to paragraph (f)(1)(iii) of this section.

**(3) Certain divestitures.** If, pursuant to a final judgment or a final order of a court or an agency of the Federal or a state government, any member or members are required to divest themselves of control of any other member and, as a result, any member ceases to be a member, the Commissioner may enter into a closing agreement under section 7121 with the group. Such closing agreement may provide that any deferred gain or loss which would otherwise be taken into account under subparagraph (1)(iii) of this paragraph shall instead be taken into account over an appropriate period of time related to the period of time within which the deferred income would have been taken into account had the divestiture not taken place, but not in excess of 10 years. Ordinarily, application for such closing agreement will not be granted where such divestiture is occasioned by the acquisition after August 31, 1966, of control of a corporation or of assets. In no event will any such application be granted unless the group establishes to the satisfaction of the Commissioner that the collection of the tax liability attributable to any deferred gain will not be jeopardized by the delay.

**(g) Holding period.** In determining the period for which a purchasing member has held property acquired in a deferred intercompany transaction, the period such property was held by the selling member shall not be included.

**(h) Examples.** This section may be illustrated by the following examples:

**Example (1).** (i) Corporations P and S file consolidated returns on a calendar year basis. On January 10, 1966, S sells land, which it has used in its trade or business, to P for $100,000. Immediately before the sale the basis of the land in S's hands is $60,000. P holds the land primarily for sale to customers in the ordinary course of its trade or business. On July 12, 1967, P sells the land to A, an individual.

(ii) The sale by S to P is a deferred intercompany transaction; S defers its $40,000 gain on the land ($100,000 less $60,000), which is gain from the sale of property described in section 1231. As of July 12, 1967, S takes the $40,000 deferred gain into account since on such date the property is disposed of outside the group. Such $40,000 gain is taken into account in determining the consolidated section 1231 net gain or loss for 1967 under §1.1502-23.

**Example (2).** Corporations P and S file consolidated returns on a calendar year basis. On August 1, 1966, P transfers property with a fair market value of $100,000 and an adjusted basis in its hands of $85,000 to S in exchange for stock and $10,000 cash. Under section 351(b), only $10,000 of the $15,000 gain is recognized by P. The transfer is a deferred intercompany transaction; P defers the $10,000 gain recognized under section 351(b).

**Example (3).** Corporations P ans S file consolidated returns on a calendar year basis and report income on the cash basis. On July 1, 1966, S pays P $1,000 interest on a loan made in 1961. The payment of interest is an intercompany transaction other than a deferred intercompany transaction; S does not defer or eliminate the $1,000 deduction for interest, and P does not defer or eliminate the $1,000 item of interest income. Thus, consolidated taxable income for 1966 reflects interest income of $1,000 and a corresponding deduction for interest of $1,000.

**Example (4).** (i) Corporation P, S, and T file consolidated returns on a calendar year basis. On January 1, 1966, S, which is in the business of manufacturing machinery, sells a machine to P for $1,000. The cost of the machine is $800. P uses the machine in its trade or business and depreciates it on the straight-line method over an estimated useful life of 10 years. Salvage value of $200 is taken into account. Thus, its annual depreciation deduction with respect to the machine is $80 ($800 ($1,000 less $200 salvage) divided by 10). On January 1, 1969, P sells the machine to A, an individual.

(ii) The sale by S to P is a deferred intercompany transaction; S defers its $200 gain on the machine ($1,000 less $800), which is characterized as ordinary income. For each of the 3 taxable years (1966, 1967, and 1968), prior to the sale to A, S takes into account $20 of its deferred gain, computed as follows:

$$\$200 \text{ deferred gain} \times \frac{\$80 \text{ depreciation deduction}}{\$800 \text{ basis to P subject to depreciation}}$$

©1991 Macmillan, Inc.

*(Example (4) cont.)*

Such $20 gain retains its character as ordinary income.

(iii) As of January 1, 1969, S takes the $140 remaining balance of the deferred gain ($200 less $60) into account since on such date the machine is disposed of outside the group. Such $140 gain retains its character as ordinary income.

**Example (5).** (i) The facts are the same as in example (4) except that beginning with 1968 P and S file separate returns.

(ii) Assuming that P, S, and T filed a consolidated return for 1965, the result is the same as in example (4). Thus, for each of the years 1966, 1967, and 1968 S takes into account $20 of its deferred gain and as of January 1, 1969, S takes the remaining $140 ($200 less $60) into account.

(iii) Assuming that P, S, and T filed separate returns for 1965, as of January 1, 1968, S takes the $160 remaining balance of the deferred gain ($200 less $40) into account since P filed a separate return for 1968 and the group had filed consolidated returns for only 2 consecutive years preceding 1968.

**Example (6).** (i) The facts are the same as in example (4) except that on January 1, 1969, P sells the machine to T for $660 in a transaction in which gain is recognized. T uses the machine in its trade or business and depreciates it on the straight-line method over an estimated useful life of 10 years. No salvage value is taken into account. Thus, T's annual depreciation deduction with respect to the machine is $66 ($660 divided by 10).

(ii) The sale by S to P is a deferred intercompany transaction; S defers its $200 gain on the machine ($1,000 less $800), which is characterized as ordinary income. For each of the 3 years (1966, 1967, and 1968) prior to the sale to T, S takes into account $20 of its deferred gain.

(iii) The sale by P to T is also a deferred intercompany transaction; P defers its $100 loss on the machine (adjusted basis of $760 ($1,000 less $240 total depreciation) less $660).

(iv) For 1969 S takes into account $14 of its deferred gain, computed as follows:

$$\$140 \text{ remaining balance of deferred gain} \times \frac{\$66 \text{ depreciation deduction}}{\$660 \text{ basis to T subject to depreciation}}$$

(v) For 1969 P takes into account $10 of its deferred loss, computed as follows:

$$\$100 \text{ deferred loss} \times \frac{\$66 \text{ depreciation deduction}}{\$660 \text{ basis to T subject to depreciation}}$$

**Example (7).** (i) Corporations P and S file consolidated returns on a calendar year basis. On May 2, 1966, S sells a machine with an adjusted basis of $50 to P for $100 in a transaction in which gain is recognized. S used the machine in its trade or business. For purposes of depreciation, P places the machine, which has an estimated useful life of 3 years, in an average life multiple asset account which is depreciated on the straight-line method at a rate of 20 percent. Under P's consistent depreciation practice it takes a full year's depreciation on all purchases made in the first half of its taxable year.

(ii) The sale by S to P is a deferred intercompany transaction; S defers its $50 gain on the machine ($100 less $50). For each of the taxable years 1966, 1967, 1968, 1969, and 1970 S takes into account $10 of its deferred gain, computed as follows:

$$\$50 \text{ deferred gain} \times \frac{\$20 \text{ depreciation deduction}}{\$100 \text{ basis to P subject to depreciation}}$$

Such $10 is characterized as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231, notwithstanding the character of the $50 gain determined at the time of the sale.

**Example (8).** The facts are the same as in example (7) and in addition during 1969 the machine is disposed of outside the group. Such disposal is treated as a normal retirement (as defined in paragraph (b) of §1.167(a)-8). The result is the same as in example (7). Thus, S takes into account $10 for each of the years 1966, 1967, 1968, 1969, and 1970 even though the property was disposed of in 1969.

**Example (9).** (i) The facts are the same as in example (7) except that the multiple asset account is depreciated over a 5-year



©1991 Macmillan, Inc.

*(Example (9) cont.)*
average useful life on the double declining balance method.

(ii) For 1966 S takes into account $20 of its deferred gain, computed as follows:

$$\$50 \text{ deferred gain} \times \frac{\$40\ (\$100 \times 40\%) \text{ depreciation deduction}}{\$100 \text{ basis to P subject to depreciation}}$$

For 1967 S takes into account $12 of its deferred gain, computed as follows:

$$\$50 \text{ deferred gain} \times \frac{\$24\ (\$60\ (\$100 \text{ less } \$40) \times 40\%) \text{ depreciation deduction}}{\$100 \text{ basis to P subject to depreciation}}$$

**Example (10).** (i) P Corporation and S Corporation, its wholly-owned subsidiary, file consolidated returns on a calendar year basis. On January 10, 1966, S sells land, with a basis of $60,000, to P for $100,000. As of the close of business on June 10, 1969, P sells 25 percent of the outstanding stock of S to A, an individual.

(ii) The sale by S to P is a deferred intercompany transaction; S defers its $40,000 gain on the land ($100,000 less $60,000). As of June 10, 1969, S takes the $40,000 gain into account for 1969 since it ceases to be a member of the group as of the close of business on such date.

**Example (11).** (i) Corporations P and S file consolidated returns on a calendar year basis. On January 15, 1966, P sells an obligation payable in installments, with a basis of $48 in its hands, to S for $60. At the time of the sale the debtor owes 3 annual installments of $20 payable each year on July 1. Such installments are paid timely.

(ii) The sale by P to S is a deferred intercompany transaction; P defers its $12 gain on the obligation ($60 less $48).

(iii) For each of the years 1966, 1967, and 1968 P takes into account $4 of its deferred gain, computed as follows:

$$\$12 \text{ deferred gain} \times \frac{\$20 \text{ portion satisfied}}{\$60 \text{ aggregate unpaid portions}}$$

**Example (12).** (i) Corporations P and S file consolidated returns on a calendar year basis. On January 2, 1966, S, a manufacturer, sells a machine to P, a distributor, for $2,000. The machine cost S $1,200. On February 1, 1966 P sells the machine to A, an individual, for $2,200 and, under section 453, reports its income thereon on the installment plan. A makes monthly payments of $110 starting with March 1966.

(ii) The sale by S to P is a deferred intercompany transaction; S defers its $800 gain ($2,000 less $1,200).

(iii) For 1966 S takes into account $400 of its deferred gain, computed as follows:

$$\$800 \text{ deferred gain} \times \frac{\$1{,}100 \text{ installment payments received}}{\$2{,}200 \text{ total contract price}}$$

**Example (13).** Corporations P and S file consolidated returns on a calendar year basis for 1966 and 1967. S reports income on the accrual method while P reports income on the cash method. On December 31, 1966, S would properly accrue interest of $1,000 which is payable to P. On February 1, 1967, S pays P the $1,000. Both the deduction and the item of income are taken into account for 1967, the later year. Thus, S takes the $1,000 interest deduction into account for 1967, which is the year P also takes the $1,000 item of interest income into account. Consolidated taxable income for 1967 reflects both interest income of $1,000 and a corresponding deduction for interest of $1,000.

**Example (14).** The facts are the same as in example (13) except that for 1967 S and P file separate returns. The result is the same as in example (13).

**Example (15).** (i) The facts are the same as in example (13) except that for 1966 P and S file separate returns.

(ii) For 1966 S takes into account the $1,000 deduction for interest; for 1967 P takes into account the $1,000 item of interest income.

©1991 Macmillan, Inc.

**Example (16).** Corporations P and S file consolidated returns on a calendar year basis. On January 10, 1968, P sells an issue of its $100 par value bonds. S purchases a bond from P for $110. S does not elect under section 171 to amortize the $10 premium. P may not take the $10 premium into account as income until it redeems the bond since S cannot properly take a deduction for the $10 premium until the bond is redeemed.

**Example (17).** (i) Corporations P, S, and M file consolidated returns on a calendar year basis. On November 20, 1962, S sold land, with a basis of $60,000, to P for $100,000. Under paragraph (b)(1) of §1.1502-31A the $40,000 gain was eliminated. Thus, S did not take into account such $40,000 gain for 1962 and P's basis in the land is only $60,000. On February 10, 1966, P sells the land to A, an individual, for $104,000.

(ii) P takes the entire $44,000 gain ($104,000 less $60,000) on the land into account for 1966 since the deferral rules provided in paragraph (c) of this section, as well as the corresponding basis rules provided in paragraph (a) of §1.1502-31, were not effective with respect to the sale of such land.

(iii) If, on February 10, 1966, P had sold the land to M for $104,000, P would defer its $44,000 gain on the land since the sale by P to M would be a deferred intercompany transaction.

**Example (18).** (i) Corporations P and S file separate returns on a calendar year basis for 1966 and file consolidated returns on a calendar year basis beginning with 1967. On January 2, 1966, S, a dealer in machinery, sells a machine to P for $2,000 and, under section 453, reports the income thereon on the installment plan. The machine cost S $1,200. P makes monthly payments of $100 starting with January 1966.

(ii) The sale by S to P is not an intercompany transaction since the sale did not occur during a consolidated return year. Therefore, S takes into account the gross profit on each of the 20 monthly payments under section 453.

(i) [Reserved]

(j) **Regulated public utilities.** Subject to the provisions of section 7121, the Commissioner may enter into a closing agreement which, notwithstanding the provisions of §§1.1502-13, 1.1502-31, and 1.1502-33, determines the consequences of deferred intercompany transactions or of any matters relating to or affected by such transactions, provided that—

(1) The purchasing members are domestic regulated public utilities as defined in section 7701(a)(4) and (33),

(2) In the taxable year immediately preceding the first taxable year for which this section is effective there was in effect among the members an arrangement relating to intercompany transactions which had a significant effect upon regulated rates of the public utility members of the group, and the accounting of the public utility members under the arrangement was accepted or approved by a regulatory agency having jurisdiction over the accounts of such members, and

(3) The Commissioner is satisfied that the terms of such closing agreement will not for any taxable year result in a reduction of the tax liability of the group (including former members) or of the shareholders of any members (or former members).

A request for such an agreement must be made on or before November 15, 1966.

**Temp. Reg. §1.1502-13T Temporary regulations for certain intercompany transactions.** (TD 7991, filed 11-29-84; amended by TD 8196, filed 4-14-88; TD 8295, filed 3-9-90.)

► This rule is also proposed to be prescribed as final regulations.

**(a)** [Reserved]

**(b)** [Reserved]

**(c) Deferral of gain or loss on intercompany transactions—(1) Inheritance of deferred gain or loss.** If the assets of the selling member are acquired by one or more members in an acquistion to which section 381(a) applies, or pursuant to a distribution in a complete liquidation not described in section 332(b), the member acquiring the greatest portion of the assets (measured by fair market value) of the selling member shall be subject to the provisions of §1.1502-13(d), (e), and (f) with respect to the entire remaining balance of the deferred gain or loss. If two or more members acquire the same portion (which is greater than that acquired by any other members), the common parent shall select which such member shall be subject to the provisions of §1.1502-13(d), (e), and (f). For purposes of this section and §1.1502-13, a member which inherits the balance of the deferred gain or loss under this subparagraph (1) shall be treated as the selling member.

**(2) Effective date.** Paragraph (c)(1) of this section applies, and §1.502-13(c)(6) does not apply, to acquisitions of assets by one or more members from another member in taxable years for which the due date (without extensions) of the income tax return is after April 14, 1988. In the case of a transaction to which this paragraph (c) applies, a reference in this part to §1.1502-13(c) is treated as including a reference to this paragraph (c).

**(d)** [Reserved]

**(e)** [Reserved]



©1991 Macmillan, Inc.