IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 02-1278 T
(Judge Francis M. Allegra)

PRINCIPAL LIFE INSURANCE COMPANY
AND SUBSIDIARIES,
Plaintiff

v.

THE UNITED STATES,
Defendant

DEFENDANT'S MOTION FOR LEAVE TO
AMEND ANSWER, AND MEMORANDUM

Defendant, the United States, respectfully moves the Court, pursuant to RCFC 15(a), (b), and (d), for leave to file an amended answer, to assert the defenses of (1) offset and (2) equitable recoupment that arose in the recomputation of plaintiff's tax liabilities for the years in suit (1991-1994) resulting from the Court's decision on the substantive issues raised in the complaint (70 Fed. Cl. 144 (2006)). We also request that the Court regard this motion and memorandum as complying with the Court's order of November 20, 2006.

As reason for its request, defendant states the following:

1. *The computation of plaintiff's tax liability for 1994 in accordance with the Court's opinion filed March 17, 2006 results in a tax deficiency (and deficiency interest), the assessment of which is barred by limitations*

The Court decided in plaintiff's favor one of the two substantive issues--*i.e.*, the issue whether the deferred tax liability on plaintiff's installment sale of mortgage loans in 1991 is subject to the interest imposed as an additional tax for each year, under Internal Revenue Code § 453A. The Internal Revenue Service (IRS) computed plaintiff's tax liabilities for tax years 1991-1994, and assessed tax deficiencies and interest for those years, based on its position that the § 453A interest does apply to the deferred tax on plaintiff's installment sale. After the Court

determined that the § 453A interest does *not* apply to that transaction, in order to arrive at the amount of the judgment to be entered for each year in suit, the IRS Appeals Office Tax Computation Specialist (Mr. Thomas J. Wells) and the Tax Division's Recomputation Specialist (Mr. Thomas F. Blake) recomputed plaintiff's liabilities for tax and assessed interest for each year, consistent with the Court's decision. As required by Code § 55(a),[1] these computations included a separate Alternative Minimum Tax (AMT) computation for each of the four suit years, excluding the additional tax that had previously been imposed under § 453A under the IRS's position.

Messrs. Wells' and Blake's computations resulted in the following overpayments of tax and assessed interest, for the tax years 1991-1993:

| Tax Year | Tax Overpayment | Assessed Interest Overpayment |
|---|---|---|
| 1991 | $1,508,838.00 | $609,820.46 |
| 1992 | $1,055,438.00 | $318,505.64 |
| 1993 | $1,070,023.08 | $482,468.86 |

(Declaration of Thomas F. Blake, ¶ 4(d).)[2] Plaintiff agrees with the Government's computations for tax years 1991-1993. (*See* ECF Items ## 105, 106.)[3]

---

1 / Section 55(a) provides:

> (a) GENERAL RULE.–There is hereby imposed (in addition to any other tax imposed by this subtitle [*i.e.*, Income Taxes]) a tax equal to the excess (if any) of–
>
> (1) the tentative minimum tax for the taxable year [defined in § 55(b)]
>
> over
>
> (2) the regular tax for the taxable year [defined in § 55(c)].

2 / Along with this motion, we are filing the Declaration of Thomas F. Blake, without the computations and spreadsheets prepared by Messrs. Blake and Wells. We will file those papers if the Court would find them helpful.

3 / Plaintiff's counsel indicated in a telephone message to defendant's counsel that he agreed with the numbers computed by the Government's specialists, and this statement was confirmed by the status report filed by plaintiff on September 18, 2006, stating that plaintiff concurs with defendant's status report filed September 15, 2006. In an e-mail message sent to defendant's counsel on December 14, 2006, however, plaintiff's counsel attached a schedule reflecting

For tax year 1994, however, Messrs. Wells and Blake's computations resulted in a $1,802,491.00 increase in the amount of plaintiff's AMT over the amount of AMT that had previously been computed by the IRS for that year. The increase was attributable to the fact that the § 453A tax was eliminated from the computation. The recomputed 1994 AMT (consistent with the Court's decision) thus exceeded the recomputed 1994 regular tax (consistent with the Court's decision) (whereas the recomputed AMT did not exceed the recomputed regular tax for the three prior years). The computations of Messrs. Wells and Blake thus resulted in *under*payments of tax and deficiency interest for 1994, as follows:

| Tax Year | Tax Deficiency (Underpayment) | Deficiency Interest (Underpayment) |
|---|---|---|
| 1994 | $426,132.00 | $96,517.78 |

The parties agree that assessment of these underpayments for 1994 is barred by the applicable statute of limitations.

We believe that plaintiff contends that the AMT computation for 1994 should not be adjusted to eliminate the additional tax that had been imposed under § 453A; but that plaintiff does *not* dispute the *accuracy* of the Government's computations for the 1994 year. (*See ibid.*) Plaintiff takes the position that, eliminating the Government's AMT computation altogether, it is entitled to a *refund* for 1994 of $1,378,903.30 in tax (and zero deficiency interest).

---

somewhat different amounts of tax and deficiency interest for 1991-1993; and stated that he intended to submit those figures to the Court on December 22 pursuant to the Court's order of November 20, 2006. While the differences in the amounts of tax and deficiency interest for 1991-1993 appear to be *de minimus*, we are not aware of the reasons for the differences.

Also, although both Mr. Blake and plaintiff computed "overpayment interest" (through a theoretical refund date), it is customary for the Court to enter judgment only for the amounts of tax and *assessed* interest due plaintiff as a result of its decision, "plus interest thereon as provided by law" ("statutory interest"). The Internal Revenue Service Center then computes the statutory interest, based on the amounts of the judgment (applying interest netting if appropriate), to a date beyond the estimated date of the actual refund or credit.

The position of the United States is that (1) the $1,802,491.00 increase in AMT for 1994 must be taken into account in computing plaintiff's tax liability for that year as a result of the Court's decision, thereby resulting in no refund of tax (or interest) for 1994; and (2) the total refund for 1991-1993 must be reduced by the remaining $426,132.00 tax underpayment (and the $96,517.78 deficiency interest) for 1994.

2. *Amendment of the answer in the circumstances presented here is consistent with RCFC 15*

Rule 15(a) provides that "leave [of Court] shall be freely given [to amend a pleading] when justice so requires.[4] Rule 15(b) mandates that, "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings," and a motion to so amend a pleading may be made at any time, even after judgment.[5] Under RCFC 15(c), the Court may permit a party to "serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Here, the computation of plaintiff's tax and interest liabilities for tax years 1991-1994 was impliedly tried by consent of the parties, since it was directly affected by the resolution of the § 453A issue; and the occasion to assert the offset and equitable recoupment defenses that are the subject of this motion did not arise until after the Court decided that issue adversely to the United States after trial, and plaintiff's tax

---

4 / The Supreme Court has emphasized that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Other federal courts have interpreted Rule 15(a) of the Federal Rules of Civil Procedure liberally. *See, e.g., Sanders v. Clemco Industries*, 823 F.2d 214, 217 (8th Cir. 1987) (Delay alone not sufficient in and of itself to deny leave to amend, but must have resulted in unfair prejudice to opposing party); *Modrey v. American Gage & Machine Co.*, 478 F.2d 470, 473 n.4 (2d Cir. 1973) (Amendment under Rule 15(a) can be proper even on remand following appeal).

5 / *See, e.g., IES Ind., Inc. v. United States*, 349 F.3d 574 (8th Cir. 2003) (affirming allowance of amendment of answer, under Fed.R.Civ.Pro. 15(b), to assert offset and equitable recoupment defenses in computing judgment amount after remand.

liabilities were properly recomputed consistently with that decision.[6] Thus, leave to amend the answer to assert the defenses at this juncture is appropriate under all three subdivisions of RCFC 15.

In *Americold Corp. v. United States,* 28 Fed. Cl. 747 (Fed. Cl. 1993), this Court granted the Government's motion for leave to amend its answer to assert an offset based on a new *substantive* issue, even though additional discovery would be required, more than one year after the proceedings had been suspended for the purpose of processing a tentative settlement agreement that defendant's counsel had agreed to recommend. The Court based its decision on the Government's *statutory* right to assert offsets, counterclaims, or other demands against the claimant, under 28 U.S.C. §§ 1503 and 2508;[7] as well as on case law. *Id.* at 750-53. The Court noted that, while the right to assert a counterclaim is circumscribed by the statute of limitations on assessment--

> the courts have recognized no statutory or other basis for limiting the government's *offset* right in tax cases. Thus, the cases consistently have held that a taxpayer seeking a tax refund in this court risks a reaudit by the government and a challenge by way of a defense in the nature of a setoff to the validity of the treatment accorded any item in the taxpayer's return, even if a new assessment for such setoff would be barred by the statute of limitations.

*Id.* at 751 (emphasis in original) (citing *Mo. Pac. R.R. Co. v. United States*, 168 Ct. Cl. 86, 338 F.2d 668, 670-71 (1964). In addition, the Court concluded:

> Longstanding precedent also holds that equitable factors cannot deny the government's right to a tax offset. *See Dysart v. United States*, 169 Ct. Cl. 276, 340 F.2d 624, 628 (1965): "There is no room in this situation, to deny the government its right of setoff

6 / Since this recomputation was necessitated by the Court's decision on the merits, and the AMT computation is mandated by the Internal Revenue Code, we do not believe that defendant is required to plead as an offset the fact that the computation results in no overpayment, and thus no refund to plaintiff, of tax or interest for the 1994 tax year. We are requesting leave to do so in an excess of caution, however.

7 / Under 28 U.S.C. § 1503, this Court has jurisdiction to "render judgment upon any set-off or demand by the United States by any plaintiff in such court." Section 2508 mandates that the Court "shall hear and determine" set-offs, counterclaims, claims for damages, or other demands "set up on the part of the United States against any plaintiff" in a suit against the United States in this Court.

> because the taxpayer's claim is relatively small, or the government's counter-demand will put them to a burdensome trial, or because the underlying facts . . . are old and complex, or the Internal Revenue Service had a previous opportunity to assess the underpaid tax. to uphold the government's right to maintain the defense in this case, it is sufficient that the setoff involves the same type of tax, payable by these taxpayers, and for the same tax as the taxpayer's claim [*i.e.*, for the same tax year]."

27 Fed. Cl. at 752 (footnote omitted).[8]

Defendant's counsel is unaware of any case in this Court in which the Government requested leave to amend its answer in order to assert the defense of equitable recoupment.[9] Leave to amend an answer in order to assert an affirmative defense (one required to be affirmatively pleaded under RCFC 8(c) (or its predecessor Court of Claims Rule 37(b)) has been "freely given," however. In *Hess v. United States*, 210 Ct. Cl. 483, 537 F.2d 457 (1976), *cert. denied*, 430 U.S. 931 (1977), for example, the Government moved to amend the answer, after filing a motion for summary judgment, in order to assert the defense of estoppel (required to be affirmatively pleaded under RCC 37(b)). The Court of Claims granted the motion, citing *Foman v. Davis* and *Erickson v. United States*, 159 Ct. Cl. 202, 210, 309 F.2d 760, 764 (1962). Rejecting the plaintiff's allegations of prejudice, the Court stated (537 F.2d at 461-62):

---

8/ The Court distinguished on several grounds the standards of *Foman v. Davis*, 371 U.S. at 182, for *denying* a motion to amend a pleading ("undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. ..."), but found they would not justify denying the Government's motion to amend in *Americold* in any event. The Court also commented (28 Fed. Cl. at 752-53) (citing precedent):

> Actually, the liberal pleading rule approved by *Foman* has been relied upon to protect the government's right to plead an offset against arguments that it is precluded by missed pleading deadlines or laches.

9/ In *IES Industries*, the Court of Appeals for the Eighth Circuit affirmed the district court's grant of leave to amend the Government's answer to assert equitable recoupment, in computing the judgment amount after the case had been remanded by the Eighth Circuit, after concluding that the plaintiff would not be prejudiced by the amendment. 349 F.3d at 579-80. The Circuit Court cited its opinion in *Coohey v. United States*, 172 F.3d 1060, 1064 n.8 (8th Cir. 1999), in which it had concluded that "failure to plead equitable recoupment did not preclude its being raised even "on appeal where the evidence supports that defense" and that it had noted that the plaintiff was not prejudiced.

> Mere delay is insufficient to bar amendment of the pleadings and plaintiff has not demonstrated that it has been or will be prejudiced, other than the fact that it incurred costs in discovery proceedings with respect to the value of the stock. Plaintiffs have not been precluded from presenting their case. Plaintiffs knew at some time prior to oral argument that estoppel was an issue and were able to brief and argue the point. Justice requires that defendant be granted leave to amend, pursuant to Rule 39(a) [RCFC 15(a)]. Moreover, we could also grant defendant's motion based on Rule 39(b) [RCFC 15(b)].

Relying on *Hess*, the Court of Claims concluded that it was appropriate to address the substance of a fraud issue (required to be affirmatively pleaded) that was first raised by the Government in its opposition to the plaintiff's motion for summary judgment, even though it had not been pleaded in the answer and the Government had not moved for leave to amend the answer. *Hollingsworth v. United States*, 215 Ct. Cl. 328, 568 F.2d 192, 198 (1977). *See also McMullan v. United States*, 231 Ct. cl. 378, 686 F.2d 915 (1982) (equitable estoppel defense addressed although not pleaded); *First Nat'l City Bank v. United States*, 218 Ct. Cl. 661 (1978) (leave granted to amend answer asserting closing agreement raised as defense in summary judgment motion); *State of Alaska v. United States*, 15 Cl. Ct. 276, 279 (1988) (to show prejudice, "a party must demonstrate that it will be: severely disadvantaged or incapable of presenting facts or evidence").

As in *Hess*, plaintiff in this case will have the opportunity to respond to this motion; and, unlike the plaintiff in *Hess*, will not incur additional costs. Moreover, plaintiff has been aware at least since early July 2006 that the Government intended to assert equitable recoupment and offset with regard to the judgment computations, and (as reported in the parties' status reports) plaintiff's counsel proposed a possible settlement of that issue (which was apparently abandoned per plaintiff's counsel's e-mail of December 14). Thus, plaintiff cannot demonstrate that it will be prejudiced by the granting of the motion to amend.

3. *The requirements for offset and equitable recoupment are met here*

The Court of Claims contrasted the defenses of "lack of overpayment" (offset) and equitable recoupment, in *Dysart* (340 F.2d at 627) (footnoted citations omitted):

> [Recoupment] involves attempts to set off tax liability from one year against that for another year after the statute of limitations has run or where attempts are made to set off

> the tax liability of one taxpayer against that of another taxpayer. This type of defense has been commonly referred to as "equitable recoupment." In these situations where the challenged item arose in a year other than in suit or where different parties are involved, the defense may only be maintained where a single or same transaction is involved.
>
> On the other hand, where both the taxpayer's claim and the government's setoff concern the same tax for the same year by the same taxpayer, the government's right to raise such a defense is unconditional and need not meet the "same transaction" requirement of the equitable recoupment defense. Here the right of the government is based on the broader principle that a taxpayer is not entitled to a refund unless he has in fact overpaid the particular tax, while in "equitable recoupment" the right to raise such a defense is based on the more limited principle that a party should not gain the protection of the statute of limitations where he has given a different tax treatment to the same transaction in different years.

As the Court of Claims explained in *Dysart*, a taxpayer simply cannot recover unless he has in fact overpaid his taxes for a particular tax year, regardless whether the tax in question can be assessed (*id.* at 628):

> The theory of setoff for tax purposes seems to us to insist upon this result. In a refund action, the taxpayer cannot recover unless he has overpaid his tax. It is not enough that he can prevail on the particular items on which he sues, for he may have underpaid with respect to other components entering into that tax. Only if the overall balance moves his way can he recover. His entire tax liability under the particular tax return is therefore open for redetermination. The setoff is one mechanism by which the government alleges that, looking at the particular tax as a whole, the taxpayer has not in fact overpaid his tax.

The *Dysart* Court looked to the Supreme Court's decision in *Lewis v. Reynolds*, 284 U.S. 281, 283 (1932)–"the taproot of this branch of recoupment"–in which the Court "flatly" announced:

> An overpayment must appear before refund is authorized. Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded.

Thus, it is clear that, in accordance with the recomputation of plaintiff's tax liability for 1994 that was required by the Court's decision of March 17, 2006, and Code § 55, plaintiff has not overpaid its taxes for its tax year 1994, and is not entitled to any refund of tax or interest for that year.

Under the doctrine of equitable recoupment, the total amount of plaintiff's overpayments for the 1991-1993 years must be reduced by the $426,132.00 tax deficiency, and the $96,517.78

deficiency interest,[10] for 1994. The Court of Appeals for the Eighth Circuit concisely summarized the salient features of the equitable recoupment doctrine, in the *IES Industries* case:

> [T]he doctrine of equitable recoupment in federal tax jurisprudence allows a court in limited situations to disregard a statute of limitations in order to further "the public interest that no one should be permitted to avoid his just share of the tax burden except by positive command of law." *Stone v. White*, 301 U.S. 532, 537 . . . (1937). In the seminal case on the doctrine, the Supreme Court said, "[R]ecoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded." *Bull v. United States*, 295 U.S. 247, 262 . . . (1935). As distinguished from offset, equitable recoupment allows the IRS to set off a refund due a taxpayer for one tax year by an underpayment from a different year, but only in the circumstances described by the Court. The purposes of limitations statutes in federal tax litigation caution against a broad application of equitable recoupment, so the doctrine may be successfully invoked only in narrowly defined cases. *Rothensies* [*v. Electric Storage Battery Co.*, 329 U.S. 296 (1946)] at 301-02 . . . . "[A] party litigating a tax claim in a timely proceeding may, in that proceeding, seek recoupment of a related, and inconsistent, but now time-barred tax claim relating to the same transaction." *United States v. Dalm*, 494 U.S. 596, 608 . . . (1990).

349 F.3d at 581 (footnote omitted). The "single transaction" requirement "will allow a single 'transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole.'" *Id.* at 582 (quoting *Electric Storage Battery*, 329 U.S. at 299).

All the elements of the equitable recoupment doctrine are present in this case: the IRS assessed § 453A interest (additional tax), in each of the years in suit, on the deferred tax on plaintiff's 1991 installment sale; as a result of the Court's decision of March 17, 2006, § 453A does not apply; in properly computing plaintiff's tax liability for each of the suit years to effectuate the Court's decision, a recomputation of AMT eliminating the § 453A interest was required by Code § 55(a); plaintiff is attempting to inconsistently apply § 55--*i.e.*, recompute the AMT for tax years 1991-1993, in which that computation has no adverse tax effect for plaintiff,

---

10/ *See Fisher v. United States*, 80 F.3d 1576, 1580-81 (Fed. Cir. 1996) (underpayment of deficiency interest may be used to offset tax overpayment). We note that Mr. Blake's interest computations reflect that plaintiff has also received an erroneous *overpayment* interest refund for 1994, in the amount of $182,791.67. We do not contend here that that overpayment interest is at issue.

but disregard the required recomputation for 1994 because it results in an underpayment of tax and interest, the assessment of which is now barred by the statute of limitations.

Respectfully submitted,

December 22, 2006

s/ Mary M. Abate

MARY M. ABATE
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6507

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief

December 22, 2006

s/ Steven I. Frahm

Of Counsel