IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 02-1278T
(Judge Francis M. Allegra)

PRINCIPAL LIFE INSURANCE COMPANY AND SUBSIDIARIES,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**PLAINTIFF'S RESPONSE AND MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO AMEND ANSWER**

For the reasons herein stated, Plaintiff Principal Life Insurance Company opposes Defendant's motion for leave to amend its answer filed on December 22, 2006.

**Statement of Facts.**

1. Principal and Defendant are in agreement that, but for the alternative minimum tax that is the subject of Defendant's motion for leave to amend, Principal would be entitled to a refund of tax and assessed interest as a result of the Court's March 17, 2006 decision, taking into account the offset affirmative defense raised in Defendant's Answer, as follows (exclusive of overpayment interest under Section 6611): (Mot. 2-3; Blake Decl. ¶4d; Pullen Affidavit attached)

| Year | Tax | Assessed Interest | Total |
|---|---|---|---|
| 1991 | 1,508,856.99 | 609,820.53 | 2,118,677.52 |
| 1992 | 1,055,438.20 | 318,505.69 | 1,373,943.89 |
| 1993 | 1,070,023.57 | 482,469.08 | 1,552,492.65 |
| 1994 | 1,378,903.30 | 0.00 | 1,378,903.30 |
| Total | 5,013,222.06 | 1,410,795.30 | 6,424,017.36 |

2. The amounts of alternative minimum tax (AMT) that remain in dispute, and which are the subject of Defendant's motion for leave to amend, are shown in bold in the following tabulation:

| | |
|---|---|
| AMT for 1994 as last adjusted (IRS Appeals) | 4,557,918 |
| **AMT for 1994 per Defendant's calculations** | **6,360,409** |
| **Increase in 1994 AMT per Defendant** | **1,802,491** |
| **Offset Sought by Def. against 1994 §453A refund** | **1,378,903** |
| Remaining balance of AMT | 423,588 |
| Other Adjustments | 2,544 |
| **1994 AMT Sought by Defendant Through Recoupment in 1991-1993** | **426,132** |

3. According to Defendant's calculations, which Principal does not dispute, deficiency (underpayment) interest in the amount of $96,517.78, would also be owing by Principal on the $426,132 shown above. (Mot. 3; Blake Decl. ¶4c)

4. The parties also agree that assessment of the AMT amounts shown in bold in paragraph 2 above, and of the deficiency interest referred to in paragraph 3, are barred by the statute of limitations. (Mot. 3)

5. On January 4, 2007, Principal filed in this Court its Complaint (No. 07-6T ) seeking application of the Court's March 17, 2006 decision on the §453A issue to Principal's taxable years 1995 and 1996. Such Complaint seeks refund of §453A interest on deferred tax for 1995 attributable to the same transaction that was the subject of this Court's March 17, 2006 decision in the amount of $2,120,187.00. Defendant is collaterally estopped from denying application of the Court's March 17, 2006 decision in Principal's 1995 taxable year.

6. Principal's undersigned counsel has on several recent occasions proposed to the Defendant's counsel that the existing dispute be resolved through a stipulation whereby Principal would agree to the full amounts of the AMT offset and recoupment asserted by the Defendant in this case for the taxable years 1991-1994 and the Defendant would agree that Principal would be entitled to an AMT credit carryover under IRC §53 in the same aggregate amount in the taxable year 1995. Contrary to Defendant's allegation (Mot. 7), such offer was not abandoned by Principal in its counsel's December 14 email to Defendant's counsel (copy attached). In any event, Defendant has never accepted it and by implication has rejected it through the filing of its motion for leave to amend. In view of Defendant's motion to amend, Principal no longer is agreeable to resolution on that basis and vigorously opposes upon the grounds set forth herein the Defendant's attempt to recover AMT for 1991-1994 through offset and recoupment.

## Argument

### I. Offset vs. Equitable Recoupment.

Defendant's motion for leave to amend raises both setoff and equitable recoupment. These, of course, are separate concepts and must be

considered separately. An offset is a claim in the nature of a counterclaim to block part or all of a refund otherwise owing to a taxpayer for a particular taxable year, where the offset claim itself arises within the **same taxable year** as the refund but assessment of it as a tax is barred by the statute of limitations. Equitable recoupment, on the other hand, was described by the 8th Circuit as follows: "As distinguished from offset, equitable recoupment allows the IRS to set off a refund due a taxpayer for one tax year by an underpayment from a **different taxable year**, but only in circumstances described by the Court." *IES Industries v. U.S.*, 349 F.3d 574 (8th Cir. 2003).

If the Defendant were to prevail in its attempt to raise a new offset in this case, it would set off against the $1,378,903 refund due Principal for 1994 on the §453A issue the additional $1,802,491 of AMT it has calculated to be due for 1994 but which it is barred from now assessing by the statute of limitations. As a result of such setoff, Principal would receive zero refund for 1994, and, without more, its refunds due from 1991, 1992, and 1993 would be unaffected. But if the Defendant were also to prevail on its claim of equitable recoupment, Principal's refund on the §453A issue for the other taxable years involved in the suit, 1991-1993, would be reduced by the remaining AMT calculated for 1994, in the amount of $426,132.

Each of these doctrines will be addressed separately. Due to the nature of the additional AMT claimed by the Defendant, it cannot prevail on its claim for equitable recoupment in 1993 unless it first prevails on its claim for a new offset in 1994 (because otherwise there is no additional AMT arising in 1994 to be recouped against Principal's refund from 1991-1993). But just because it may prevail on claimed new offset in 1994 does not automatically entitle it to equitable recoupment from 1991-1993.

**II. Defendant's Attempt To Raise A New Offset Should Be Denied Because, Having Been Neither Pled Nor Tried, It Was Waived Due To Untimeliness And Is Too Late.**

It is true that 28 USC §§1503 and 2508 confer indisputable jurisdiction for the Defendant's prosecution of counterclaims and setoffs in actions pending in this court. However, despite the expansive language of those statutes, they, like any statute, must be accorded a reasonable construction. To that end, there is no evidence in the legislative history that Congress intended through the enactment of these statutes to deprive this court of the discretion afforded the federal courts for many years to apply the standard of *Foman v. Davis,* 371 U.S. 178 (1962), to late-stage attempts to amend.

While the Supreme Court in *Foman v. Davis, supra,* held that the plaintiff should have been permitted to amend its complaint to assert an alternative ground for recovery after the district court had entered judgment, in that case, unlike this one, there had been no trial and the district court had summarily dismissed the plaintiff's complaint for failure to state a claim upon which relief could be granted. In the course of its holding, the Court articulated the oft-quoted rule that "undue delay" constitutes grounds for denial of a motion to amend made under Rule 15(a) and it emphasized that -

> **[T]he grant or denial of an opportunity to amend [under Rule 15(a)] is within the discretion of the District Court**, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules. *Id.* at 182. (Emphasis supplied.)

Referring to 28 USC §§1503 and 2508, the Court of Claims a few years later stated in *Scott v. U.S.*, 354 F.2d 292 (Ct.Cl. 1965), "[t]hese words of the statute and rule, unqualified as they are, may tend in their breadth to support the counterclaim here, but they do not compel that result. Decision must be reached through the corridors of judicial administration and procedural philosophy." *Id.* at 297.

It is also true that in a normal situation, to be entitled to a refund for a particular tax year, the taxpayer must prove that it made an overpayment of tax for the taxable year and the government may assert a right of setoff against a taxpayer's claim for refund to establish that in fact no overpayment of tax exists for that year. *Dysart v. U.S.*, 340 F.2d 624 (Ct.Cl. 1965). But setoff is still an affirmative defense that must be raised at the proper time in the pleadings, as Defendant here did in its Answer with its affirmative defense for setoff on the §453A issue.

In *Missouri Pacific Railroad Co. v. U.S.*, 338 F.2d 668 (Ct.Cl. 1986), the Court of Claims emphasized that any claimed setoff should be evaluated **before trial.** Defendant in this case had ample opportunity to plead the AMT setoff issue before trial so that it could have been addressed by the parties and the Court before and at the time of trial. This case was filed in early 2002 and the Defendant had three years before trial commenced in March, 2005. Contrary to its assertion that "the occasion to assert the [defenses] . . . did not arise until after the Court decided [the §453A] issued adversely to the United States after trial . . . .," (Mot. 4) the Defendant therefore had three years in which it could have calculated the amount of refund to which Principal would be entitled if it prevailed in the action and, had it done so, the Defendant would have known that the AMT issue then

had to be raised as an offset. It is axiomatic that he who sits on his hands when they should be raised should not be permitted to raise them later when it is inappropriate. This doctrine of laches has been a part of our system of justice for centuries and, taking that doctrine into account, justice does not require (within the standard of Rule 15(a)) that, after almost five years, extensive pleadings and discovery, full trial, and decision by the court on the merits, the Defendant be allowed to now amend its answer to raise a new setoff claim for 1994. Referring to this doctrine of laches, the Supreme Court in *Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296, 301 (1946) said, "[t]he theory is that even if one has a just claim . . . the right to be free of stale claims in time comes to prevail over the right to prosecute them."

Even though the government was allowed to amend three years after the complaint was filed in *Americold Corp. v. U.S.*, 28 Fed. Cl. 747 (1993), under that trial court's expansive reading of the government's right to setoff, the proceedings in that case had been stayed and no decision on the merits had yet been reached by the court. As the 8th Circuit has held, "[a]lthough a **pretrial** motion for leave to amend one's complaint is to be liberally granted, different considerations apply to motions filed" after a decision has been rendered. *Dorn v. State Bank of Stella*, 767 F.2d 442, 443 (8th Cir. 1985). After giving "due regard" to Rule 15(a), the 10th Circuit similarly held that the trial court had properly exercised its discretion in denying a motion to amend made two years after filing of the movant's Answer and after judgment had been entered. *Landon v. Northern Natural Gas Co.*, 338 F.2 17 (10th Cir. 1964). *See also, Best Canvas Products v. Ploof Truck Lines*, 713 F.2d 618 (11th Cir. 1983) (citing *Foman, infra,* "undue delay" justified trial court's exercise of discretion to deny motion to amend made

after a two-year discovery period and after summary judgment had been entered.)

The Defendant's reliance on *Erickson v. U.S.*, 309 F.2d 760 (1962), is misplaced. There the Court of Claims held that where evidence was introduced at trial on an affirmative defense that wasn't pled, it could be properly considered by court. In this case, there was no evidence at trial on the AMT offset affirmative defense that would warrant this Court's consideration of it within the precedent of *Erickson.* Similarly, in *Hess v. U.S.*, 537 F.2d 457 (Ct. Cl. 1976), also relied on by Defendant, the motion to amend was filed at the time summary judgment was sought and before any decision on the merits had been rendered by the court, and this was also the case in *McMullan v. U.S.*, 686 F.2d 915 (Ct.Cl. 1982). *See also*, *First National City Bank v. U.S.*, 218 Ct.Cl. 661 (1978).

Instead, this case is much more like *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971), where, in the words of the concurring opinion, -

> Two years after the filing of Zenith's counterclaim, one year after the close of evidence, nine months after the filing of Hazeltine's post-trial brief, and two months after the trial judge had made preliminary findings of fact and conclusions of law, Hazeltine, represented by new counsel, [through a motion to amend] raised for the first time its defenses of release and the statute of limitations. *Id* at 359, Harlan, J., concurring.

The Court in *Zenith Radio* held that rejection of the affirmative defenses based on waiver due to untimeliness was within the trial court's sound discretion under Rule 15(a). It stated:

> On the assumption that the trial court did hold the defenses of limitations and release to have been waived, we cannot say that the judge abused his discretion or stressed too much the value of avoiding reopening a trial to litigate matters that HRI had an opportunity, but neglected, to litigate. . . . Whatever HRI's reasons for not offering its limitations and release defenses during trial, . . . the trial court would not have erred in concluding that they were waived. *Ibid*. at 332.

Nor does the Defendant's attempt to raise its setoff claim by amendment fit under Rule 15(b). Contrary to the Defendant's contention (Mot. 4) that the issue was tried by implied consent, nothing raised or introduced by either side at trial concerned the issue now sought to be raised by amendment of the pleadings, namely, Defendant's entitlement to setoff for additional AMT in 1994. In the words of the 8th Circuit, "there is absolutely nothing in the record before us which would support an inference of such consent by implication," and, accordingly, the motion to amend under Rule 15(b) was properly denied where it had been made "some two and one-half years after filing of the original complaint, one year and eleven months after the filing of the amended complain; and more than six weeks after the trial had been completed [and after all briefs had been submitted] and the case taken under advisement by the trial court." *Standard Title Insurance Co. v. Roberts,* 349 F.2d 613, 621-622 (8th Cir. 1965).

Nor does Defendant's claim fit within Rule 15(d) as it claims in its motion. (Mot. 4.) (The Defendant cites Rule 15(c) but quotes Rule 15(d)). Defendant's failure to calculate and anticipate the additional AMT that would arise in 1994 if Principal prevailed on the §453A issue was a "non-occurrence" or "non-event," and therefore the antithesis of the type of "**transaction**," "**occurrence**," or "**event**" contemplated by Rule 15(d).

The Defendant's attempt to raise another offset defense at this late stage should therefore be denied. As has been stated by several courts as the reason for denying similar motions, "litigation must end sometime." *Colorado Interstate Gas Co. v. Natural Gas Pipeline Co.*, 962 F.2d 1528, 1534 (10th Cir. 1992); *Manchester Group v. Comm.*, T.C. Memo. 1997-576 (1997); *Pietanza v. Comm.*, T.C. Memo. 1990-524 (1990); *Estate of Egger v. Comm.*, 92 T.C. 1079, 1083 (1989); *Abdelsamed v. U.S.*, 2002 WL 31409521 (D. Colo. 2002). And, as added by the district court in *OCG Microelec. Materials v. White Consol. Indus., Inc.*, 40 F.Supp.2d 83, 89 (D. R.I. 1999), "[h]ere and now is just as good a time as any." *See also, Comm. v. Long's Estate*, 304 F.2d 136 (9th Cir. 1962) (Tax Court did not abuse its discretion in refusing to allow IRS to amend its answer to claim additional taxes four years after suit began but before trial).

## **<u>III. Equitable Recoupment Does Not Lie Because Neither The Same Transaction Nor Inconsistent Treatment Is Involved.</u>**

Even if the Defendant were entitled to setoff in 1994, which it is not, it still would not be entitled to equitable recoupment in 1993 of the remaining $426,132 of additional 1994 AMT. This is because, in contrast to setoff, a right to equitable recoupment must arise out of the **same transaction**, and the additional 1994 AMT asserted under §55 has nothing whatsoever to do with the 1991 installment sale of mortgage loans by Principal to Prudential, or the sale of the promissory notes received as consideration by Principal to its wholly-owned subsidiary, through which the Defendant originally claimed additional tax by its attempted application of §453A.

The essential prerequisites for equitable recoupment were summarized by the Supreme Court in its decision in *Dalm v. U.S.*, 494 U.S. 596, 608 (1990), where it stated, "a party litigating a tax claim in a timely proceeding may, in that proceeding, seek recoupment of a related, and **inconsistent,** but now time-barred tax claim relating to the **same transaction**." (Emphasis supplied.)

In *Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296 (1946), while the Supreme Court declined to uphold a claim by the taxpayer for recoupment of taxes paid over twenty years earlier, it provided examples of the instances that qualify under the "same transaction" requirement:

> In Bull v. United States [295 U.S. 247], the one taxable event was receipt by executors of a sum of money. An effort was made to tax it twice - once under the Income Tax Act as income to the estate after decedent's death and once under the Estate Tax Act as part of decedent's gross estate. This Court held that the amount of the tax collected on a wrong theory should be allowed in recoupment against an assessment under the correct theory. In Stone v. White [301 U.S. 532], likewise, both the claim and recoupment involved a single taxable event, which was receipt by an estate of income for a period. The trustees had paid the income tax on it but this Court held it was taxable to the beneficiary. Assessment against the beneficiary had meanwhile become barred. Then the trustees sued for a refund, which would inure to the beneficiary. The Court treated the transaction as a whole and allowed recoupment of the tax which the beneficiary should have paid against the tax the Government should not have collected from the trustees.

*Rothensies, supra* at 272. *See also, Dysart v. U.S., supra* at 627. ("such a defense is based on the more limited principle that a party should not gain

the protection of the statute of limitations where he has given a different tax treatment to the same transaction in different years.")

Application of the "same transaction" principle was also the subject of the 8th Circuit's decision in *Coohey v. U.S.*, 172 F.3d 1060 (8th Cir. 1999), which dealt specifically with AMT. After the IRS assessed AMT against the taxpayers in the amount of $193,297 for the taxable year 1990, and the taxpayers paid that amount, they took an AMT carryover credit under §53 in the following year, 1991, in the amount of $89,589, and received a refund based on the resulting reduced tax liability for 1991. Therefore, when the taxpayers commenced a refund suit for refund of the $193,297 paid for 1990, the IRS sought equitable recoupment with respect to the AMT credit applied in 1991. In upholding IRS' claim for equitable recoupment, the 8th Circuit stated:

> The relationship of the 1990 AMT refund and the 1991 AMT credit are clearly a single transaction. The 1990 AMT which was assessed and paid by the taxpayers had a direct relationship to the allowance of the 1991 AMT credit. Without the assessment of the original amount in 1990 there would never have been a credit given to the taxpayer for 1991. *Id.* at 1064.

In contrast, in this case there exists no such direct relationship between the additional $426,132 of AMT arising, per the Defendant's claim, in 1994 and the refunds from 1991-1993 that the Defendant seeks to recoup such amount against. *See, e.g., Provident Life And Accident Ins. Co. v. U.S.*, 334 F.Supp.2d 1029 (E.D.Tenn. 2004).

The *Coohey* case also illustrates another prerequisite to application of the doctrine of equitable recoupment, according to the Supreme Court's

decision in *Dalm*, namely, inconsistency of positions and inconsistent taxation. In *Dalm*, the Supreme Court said, "our precedents allowing recoupment pertain to cases where a single transaction is subjected to inconsistent taxation . . . ." *Dalm, supra*, at 611. The 8th Circuit explained how that requirement was met in that case:

> Taxpayers received an AMT credit for 1991 that was based on their AMT liability for 1990. Taxpayers then sought a refund of the 1990 amount and have since asserted that they owe no subsequent liability for the 1991 AMT credit. These positions are inherently inconsistent and inconsistent treatment would occur if Taxpayers were allowed to retain the 1991 AMT credit, which was permitted as the result of the incorrect assessment of the 1990 AMT, because of the subsequent redetermination and refund of the 1990 AMT. Allowing the correction of the 1990 AMT without correction of the 1991 AMT credit would assign tax liability inconsistently.

Similarly, in *IES Industries v. U.S.*, 349 F.3d 574 (8th Cir. 2003), the court allowed the IRS leave to amend its Answer to raise the defense of equitable recoupment, even after the substantive issue had been decided on the merits but before entry of judgment (because, as here, the parties could not agree on the amount of the judgment due to dispute over whether equitable recoupment could be properly applied). But the reason the amendment to raise equitable recoupment was allowed was because, unlike here, it related to the **same transaction** as the substantive issues, namely stripped and sold American Depository Receipts on which the taxpayer had claimed capital losses in 1989 and 1990 but on which the foreign dividends received had been eliminated from its income in 1991 and 1992. *Id.* at 582.

## CONCLUSION

For the foregoing reasons, the Defendant's motion for leave to amend should be denied.

Respectfully submitted,

Dated: January 8, 2007.

s/ Bruce Graves

Bruce Graves
Brown, Winick, Graves, Gross,
Baskerville and Schoenebaum, P.L.C.
666 Grand Avenue, Suite 2000
Des Moines, Iowa 50309
Telephone: 515/242-2400
Fax: 515/283-0231

ATTORNEY FOR PLAINTIFF

Filed electronically

<u>Copy of email sent by Bruce Graves to Mary Abate on December 14, 2006:</u>

Mary, FYI, attached is a summary schedule that shows that tax and interest due Principal according to our calculations. The bottom section of the schedule shows the numbers we will be reporting to Judge Allegra on Dec. 22 per his instructions.
Bruce