IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 02-1278 T
(Judge Francis M. Allegra)

PRINCIPAL LIFE INSURANCE COMPANY
AND SUBSIDIARIES,
Plaintiff

v.

THE UNITED STATES,
Defendant

DEFENDANT'S SUPPLEMENTAL MEMORANDUM
PURSUANT TO THE COURT'S ORDER OF JANUARY 29, 2007

Defendant, the United States, respectfully submits this supplemental memorandum addressing the issues raised in the Court's order of January 29, 2007.

1. Issue I. The first issue raised by the Court concerns whether there is any time limit for the Government to raise an offset or equitable recoupment defense, particularly if it is raised after trial and decision on the merits. We believe that the answer, under this Court's precedent, is a *qualified* "yes," based on *Dysart v. United States*, 169 Ct. Cl. 276, 340 F.2d 624 (1965); and on two subsequent Court of Claims opinions–*Bank of America v. United States*, 217 Ct. Cl. 731 (1978), and *St. Louis-San Francisco Rwy. Co. v. United States*, 189 Ct. Cl. 280, 417 F.2d 1359 (1969).

*Dysart* did not deal with the question of the *timing* of the raising of the offset defense. In that case, the Internal Revenue Service (IRS) had offset an asserted tax deficiency that could not be assessed, because of limitations, against the refund admittedly due to the taxpayer on its refund claim. That is, the offset was actually raised at the administrative level, and then became the subject of the taxpayer's subsequent refund suit in the Court of Claims. There, the taxpayer argued, *inter alia*, that the IRS had acted inequitably, and the Government's recoupment defense should be denied on equitable grounds. It was in this context that the Court held that--



2215208.1

> where both the taxpayer's claim and the government's setoff concern the same tax for the same year by the same taxpayer, the government's right to raise such a defense is unconditional . . . . [T]he right to raise a setoff is not subject to equitable considerations as taxpayers contend . . . .
>
> * * * * *
>
> The established doctrine of setoff in tax cases gives the government that right. There is no room, in this situation, to deny the government the right of setoff because the taxpayer's claim is relatively small, or the government's counter-demand will put them to a burdensome trial, or because the underlying facts . . . are old and complex, or the Internal Revenue Service had a previous opportunity to assess the underpaid tax. To uphold the government's right to maintain the defense in this case, it is sufficient that the setoff involves the same type of tax, payable by these taxpayers, for the same year as the taxpayers' claim.
>
> * * * * *
>
> Moreover, even if equitable considerations are used to bar the government, the taxpayer's main complaint here is lack of diligence or laches, which factor we think should not be determinative in tax litigation. In *Lewis v. Reynolds*, [284 U.S. 281 (1934)], the Commissioner of Internal Revenue had the same opportunity to calculate the correct tax within the limitations period, but the setoff was allowed without question. That is likewise true of almost all of the cases, cited above, which have permitted setoff.

340 F.2d at 627-28, 630.[1] The *Dysart* Court, however, distinguished some cases in other jurisdictions in which those courts had (340 F.2d at 630, n.10)--

> [denied] leave belatedly to raise a defense of setoff which the government had failed to interpose at the proper time. These cases turn on the considerations of judicial administration concerned with the delayed amendments of pleadings and the belated raising of new issues–not with any general discretionary power over tax setoffs.

In the *St. Louis-San Francisco Railway* case, the Court of Claims upheld the trial commissioner's allowance of amendment of the Government's answer to raise two new offset defenses "relating to the accounting treatment for second-hand rail and welded rail," over the taxpayer's objection "that the amendment comes too late and will permit defendant to unduly prolong the litigation." The Court then went on to comment, however:

> This is not to say that the government may unduly delay the raising of the issue, and we now warn that any undue delay on the part of the government will result in the denial of the right to raise setoff defenses. In other words, we hold that the defense must be raised at the earliest possible stage in the proceedings.

---

1/The Court distinguished the "offset" type of recoupment from "equitable recoupment" on the basis that an offset defense (*i.e.*, "lack of overpayment of the particular tax involved in the suit for refund") involves the same taxpayer, tax year, and type of tax, while an equitable recoupment defense may involve different taxpayers, different tax years, or different types of tax. 340 F.2d at 627. The equitable recoupment defense in this case is discussed below.

417 F.2d at 1360. In *Bank of America*, the Court held that the trial judge had not abused his discretion in determining that there had been "such undue delay" (217 Ct. Cl. at 732):

> This is a complex case, filed over seven years ago . . . . If leave were now granted to add the new offset, an additional issue would be inserted, and at best it is uncertain whether that new issue will entail further discovery, dispute over relevant facts, or other inquiry into a factual setting. . . . . Defendant's reply is that nevertheless plaintiff suffered no prejudice, but we think it reasonable to conclude that, in a case of this vintage, complexity, and expenditure of effort, it is prejudice enough to introduce, at so late a stage, a new issue which defendant does not demonstrate can be resolved without further factual disputes, substantial factual inquiry by taxpayer, or other delay.[[2]]

It thus appears that, under this Court's precedent, the Government's offset defense in a tax case may not be defeated by equitable considerations, such as expiration of the statute of limitations on assessment, or the fact that the offset issue might require the taxpayer to participate in a lengthy trial; but that the ability to raise that defense in a given case may be limited by such considerations as judicial economy or prejudice to the other party caused by undue delay in raising the issue. As will be discussed below, those considerations are not implicated here.

2. <u>Issue II.</u> The second issue raised by the Court concerns the use of a procedure, analogous to the Tax Court's Rule 155 proceeding, to determine the amount of plaintiff's recovery in this case (after decision on the merits) that appears to have permitted the raising of a new issue; and whether that should enter into a determination of whether plaintiff would be prejudiced if defendant were allowed to amend its answer in this case. We believe that the answer is "yes"; and that the AMT adjustment raised by the United States at this point in these proceedings is not a new issue, and there is no prejudice, based on several Tax Court decisions applying Tax Court Rule 155, and on a 1983 decision of the United States Claims Court (*Southeastern Bank of Orlando v. United States*, 2 Cl. Ct. 530 (1983)).

Tax Court Rule 155 ("Computation by parties for entry of decision") provides, in subparagraph (a), that the court may withhold entry of its decision to permit the parties to

---

<u>2</u>/The Court also seems to have been influenced by the defendant's assertions regarding the complexity of the factual issues, including the offset issues, in the case. 217 Ct. Cl. at 732, n.1.

attempt to agree on the computation "pursuant to the Court's determination of the issues, showing the correct amount of the deficiency, liability, or overpayment to be entered as the decision." If the parties are unable to agree on the computation, subparagraph (b) provides, in pertinent part:

> If in accordance with this Rule computations are submitted by the parties which differ as to the amount to be entered as the decision of the Court, then the parties may, at the Court's discretion, be afforded an opportunity to be heard in argument thereon and the Court will determine the correct deficiency, liability, or overpayment and will enter its decision accordingly.

Rule 155(c) states (emphasis added):

> (c). Limit on Argument. Any argument under this Rule will be confined strictly to consideration of the correct computation of the deficiency, liability, or overpayment resulting from the findings and conclusions made by the Court, and no argument will be heard upon or consideration given to the issues or matters disposed of by the Court's findings and conclusions or to any *new issues*. This Rule is not to be regarded as affording an opportunity for retrial or reconsideration.

a. "New issues." A considerable body of case law has developed in the Tax Court regarding the meaning and application of the term "new issues"–*i.e.*, issues that may not be raised or considered during the computation stage after decision on the merits. While these decisions are obviously not binding on this Court, they are illuminating on the question raised in the Court's order of January 29.[3]

In *Estate of Buchholtz v. Commissioner*, 70 T.C. 814 (1978), the Rule 155 proceeding involved a dispute over the valuation of Treasury bonds, for inclusion in the decedent's gross

---

3/Tax Court Rule 155 appears to be much more restrictive than a similar rule of this Court–RCFC 42(c), which does not explicitly prohibit the raising of new issues, but simply provides:

> Upon stipulation of the parties, as approved by the court, or upon order of the court, a trial may be limited to the issues of law and fact relating to the right of a party to recover, reserving the determination of the amount of recovery, if any, for further proceedings. In any case, whether or not a stipulation or order has been made under subdivision (c) of this rule, the court, upon determining that a party is entitled to recover, may reserve determination of the amount of the recovery for further proceedings. Any motion for reconsideration shall be filed not later than 10 days after a separate determination of liability.

RCFC 42(c) replaced Rule 131(c) of the Court of Claims, discussed briefly below.

estate, that were eligible to be redeemed at par (face) value to pay the decedent's estate tax liability. In the IRS's recomputation, for the first time, bonds sufficient to pay not only the tax deficiency but the interest thereon were included in the gross estate at par value. The estate contended that only those bonds in amounts necessary to pay the tax deficiency–not the interest as well--should be valued at par, with the rest valued at the lower market value. The Tax Court--

> reject[ed] petitioner's contention that respondent has raised a "new issue" not properly cognizable in a Rule 155 proceeding. . . . We conclude that it is entirely appropriate for us, in the Rule 155 proceeding herein, to consider all the issues raised concerning such interest, since *such issues involve pure questions of law and are inextricably intertwined* with the proper amount to be entered as a decision herein.

*Id.* at 815. *Cf.*, *Jones v. Commissioner*, T.C. Memo. 1989-61 (1989) (emphasis added).

In *Cloes v. Commissioner*, 79 T.C. 933 (1982), the court rejected the taxpayers' attempt to raise a claim for income averaging, as a "new issue" in the Rule 155 proceeding, because the record would have had to be reopened to admit new evidence. The years before the court were 1976-1978. During the computation stage, the taxpayers submitted amended returns for those years showing the results of income averaging. The base period years (*i.e.*, the four years prior to the 1976 "computation year" (Code § 1301(c)(1), (3)) were not before the court, however. The court concluded (at 935-36):

> Clearly, on the basis of this record, the right to income average raises a new issue. In those cases where a late claim of income averaging has been permitted, the record contained all of the evidence necessary to making such computation and the issue was raised no later than at the trial. . . . By contrast, this Court rejected an attempt by a taxpayer to elect income averaging after the trial and the entry of decision . . . and, in so doing, emphasized (see n. 2 to that opinion) that in *Hosking v. Commissioner*, [62 T.C. 635 (1974)], all the facts as to the correct amount of taxable income for each base period year were known. . . .
>
> * * * * *
>
> The plain, hard fact is that if we were to grant petitioners' motions, we would of necessity have to reopen the record and afford petitioners a further trial. The petitioners would have to prove, and respondent would be free to contest, any and all items of income and deduction for the base period years. We see no requirement of justice that compels a favorable decision on petitioners' motions under such circumstances. Indeed, a further trial is exactly what is not permitted under Rule 155.

For similar reasons, the Ninth Circuit affirmed the Tax Court's refusal to consider the taxpayer's challenge to the IRS's Rule 155 income computation that was based on the taxpayer's

contention that the IRS had not taken into account its LIFO inventory accounting method, in *Paccar, Inc. v. Commissioner*, 849 F.2d 393 (9th Cir. 1988). The court stated (at 399-400):

> Paccar argues this is not a "new issue" because there is no controversy, "nothing but the routine computation applying LIFO rules." The matter, however, is anything but routine; the tax court found that in order to determine whether Paccar's proposed computation was accurate, "it would be necessary to reopen the record to permit [Paccar] to put in the necessary portions of its books and records to show the basis of its claimed adjustment to the amount it originally claimed on its return as a loss on the sale of the Sajac inventory, which was disallowed in full by [the Commissioner] in the notice of deficiency." Paccar did not challenge the computation in the original pleadings or proceedings. Because the resolution of the matter would have required the tax court to consider new evidence not presented at the original proceeding,[FN7] the tax court did not err by precluding consideration of the issue at the Rule 155 proceeding.

In n.7, the *Paccar* court commented, "[I]n the decisions which have found no 'new issue' to exist, the evidence necessary to resolve the dispute between the parties was already in the record or within the scope of the evidence to be presented in support of issues already pleaded." *See Pinson v. Commissioner,* T.C. Memo. 2000-393 (2000) (reconsideration allowed and taxpayer permitted to claim foreign tax deduction, rather than credit, in Rule 155 proceeding, principally because of similarity in underlying factual and substantive predicate).

The Tax Court has also concluded that "automatic" mathematical adjustments that are "triggered" by the court's determination on the merits are not "new issues":

> It is also normal and usual for certain purely mathematical adjustments to be triggered by the change of taxable income, adjusted gross income, etc. Some examples of the automatic mathematical changes are the percentage limit on contributions, medical deductions, or investment tax credits. . . . On occasion a change in basis may generate a concomitant change in depreciation. . . .

*The Home Group, Inc. v. Commissioner*, 91 T.C. 265, 269 (1988). Citing *Home Group*, the Tax Court held, in *Emert v. Commissioner*, T.C. Memo. 1999-175 (1999), 1999 WL 323806, *aff'd*, 249 F.3d 1130 (9th Cir. 2001), that the § 481 adjustment incorporated in the IRS's computation in the Rule 155 proceeding was not a "new issue" (1999 WL 323806 at *1):

> Section 481 is applicable here because respondent has determined, and we have sustained, a change in method of accounting . . .
>
> "If there has been a change in method of accounting, then section 481 comes into operation and adjustments necessary to prevent an omission of taxable income *must* be made." *Prino Pants Co. v. Commissioner*, [78 T.C. 705 (1982)] at 720 (emphasis added).

> Once the Commissioner changes the taxpayer's method of accounting in regard to inventories, "that change of accounting method triggers the adjustments of section 481. If any amounts are omitted from taxable income because of a change in method of accounting, then section 481 *mandates* adjustments to prevent these omissions. *Id.* at 726 (emphasis added).

Consistent with the foregoing, the Tax Court has held that the alternative minimum tax (AMT) is not only *not* a "new issue," but it should actually be *confined* to a Rule 155 proceeding (and thus, in effect, it does not need to be raised in the pleadings):

> One final matter remains to be disposed of. . . . After issuance of the deficiency notice and after the filing of the answer to the petition, the IRS discovered that an error had been made in the computation of the deficiency, specifically, in the computation of the alternative minimum tax. The Commissioner accordingly filed a Motion for Leave to File an Amendment to the Answer and sought in that Amendment an increase of $8,998.15 in the deficiency for 1982. The Petitioner did not object to the motion but stated that the Commissioner has the burden of proof with respect to the increase pursuant to our Rule 142(e). The Court granted the motion and the Amendment to Answer was filed. The matter was not thereafter dealt with in the Stipulation of the parties or considered by either of them on brief.
>
> Of course the Commissioner bears the burden of proof in respect of any increase in deficiency. But, unless there is more to the matter than has been disclosed to the Court, the increase here appears to relate solely to a computation, not calling for any "proof" by anyone. The correct amount of the deficiency should follow automatically from the arithmetic computation under Rule 155, based upon the conclusion reached above on the section 1031(a) issue and the settlement that the parties have entered into in respect of other issues in the case. There would not appear to be anything relating to the increase in deficiency calling for the production of evidence by the Commissioner. We leave it to the parties to make the correct computations for the Decision to be entered under Rule 155.

*Estate of Bowers v. Commissioner*, 94 T.C. 582, 594-95 (1990). *Accord, Kluckwan, Inc. v. Commissioner*, T.C. Memo. 1994-402, 1991 WL 444446 (1994):

> By amendment to the answer, respondent alleged that petitioner was liable for alternative minimum tax for the year 1988. Although the Court agrees that the matter of liability for the alternative minimum tax for ANC's is the same as for any other corporation, and therefore that the alternative minimum tax provisions potentially would apply to this petitioner, . . . it is still a computational matter in this case and will be resolved by the necessary Rule 155 computation that will ensue here, see *King v. Commissioner*, T.C. Memo. 1993-160[, 1993 WL 114449 (1993)].

In *King v. Commissioner*, cited in *Kluckwan*, the parties had settled all issues prior to trial, but in the resulting computation stage the taxpayers (1993 WL 114449 at *1)--

> object[ed] to respondent's computation of their tax liability insofar as it includes alternative minimum tax. Petitioners contend that they received no notice in the notice of deficiency of the application of alternative minimum tax. . . .

The court rejected that argument, concluding (at *2):

> Petitioners object that they did not receive a notice of deficiency determining the applicability of alternative minimum tax. We do not see the relevance of this objection, as the dispute arose in the course of preparing the decision document. . . . No alternative minimum tax was determined in the notice of deficiency because, under respondent's determination in preparing the notice, petitioner's income was increased so that petitioners had no alternative minimum tax liability. . . .
>
> We find that grounds for relief are lacking in this case. . . . [T]he correct amount of the deficiency attributable to alternative minimum tax should follow automatically from the arithmetic computation under Rule 155. . . . The situation here is analogous to a situation in which there is a disagreement as to the computation of the deficiency under Rule 155.

b. <u>"Prejudice."</u>

The concepts of "new issues" and "prejudice" in the context of a Rule 155 proceeding are actually two sides of the same coin. "Prejudice" does *not* result from the mere fact that, because of a computational issue arising in a Rule 155 proceeding, the taxpayer's tax liability will be increased. "Prejudice" results (as does the frustration of the principles of judicial economy) from the raising of a "new issue" that will require the reopening of the record for the presentation of new evidence in a new trial.

Thus, in *Gladstone v. Commissioner*, T.C. Memo. 1992-10, 1992 WL 808 (1992), the Tax Court held that the IRS would be prejudiced if the taxpayer were allowed to raise a new net operating loss (NOL) carryback deduction issue in the Rule 155 stage, where the loss year and other carryback years were not before the court (1992 WL 808 at 3):

> We do not find any justification for petitioners' failure to timely raise the issue that would cause us to consider reopening the record for further trial. Accordingly, we hold that respondent would be prejudiced if we were to allow petitioners to raise the NOL carryback deduction at this point in the proceedings.
>
> * * * * *
>
> First, as noted above, if we were to allow petitioners to raise the NOL carryback deduction issue now, the record in the instant case would have to be reopened to permit trial of the issue. Petitioners would be required to prove and, respondent would be free to contest, the correctness of the NOL claimed on the 1982 return. . . . Respondent also should have the opportunity to review all earlier years to which the 1982 NOL is a carryback in order to determine whether the NOL has been used in such years. The

> record is devoid of evidence upon which the Court could base a conclusion as to whether the 1982 NOL carryback has been properly applied in such earlier years.

And, in *Vest v. Commissioner*, T.C. Memo. 1995-188, 1995 WL 238691 (1995), *aff'd*, 89 F.3d 839 (7th Cir.) (Table, WL 95-2797), *cert. denied*, 519 U.S. 591 (1996), the court similarly refused to consider an NOL carryback issue at the Rule 155 stage, for reasons of judicial economy and prejudice to the IRS, because a new trial would be required (1995 WL 238691 at *3, *5):

> The subject NOL arose in 1986, a closed year that was not at issue in the underlying proceedings. . . . If we were to grant petitioners' motion to raise this issue, we would be compelled to reopen the record and afford petitioners a second trial, in which the validity of every item of income, deduction, and credit reported on petitioners' 1986 joint income tax return would be at issue. The ensuing proceedings could easily rival the length and complexity of those already completed by the parties. Such a continuation of this case would contravene the principles of judicial economy that underlie Rule 155.
>
> * * * * *
>
> Furthermore, we may take into consideration, as a form of prejudice to respondent, the fact that a new trial would be required and that respondent would be forced to incur the delays and costs of an additional proceeding.

c. *Southeast Bank of Orlando.* In this case, which spanned the period in 1982 during which the Court of Claims was reconstituted, the Government had moved to dismiss on jurisdictional grounds. Under the Court of Claims' procedural rules, dispositive motions were heard by the Court's appellate division, which denied the motion to dismiss and also granted plaintiffs' motion for summary judgment on the merits, finding that an earlier decision between the same parties (*Sun First Nat'l Bank v. United States*, 221 Ct. Cl. 469, 607 F.2d 1347 (1979)) was controlling. The Court then remanded the case to the trial division, for determination of the amount of recovery under then-Rule 131(c).[4] The dispute that came before the new Claims Court, during the computation stage, involved the Government's proposed offset of the amount of recovery by the AMT that was based on the income adjustment resulting from the earlier *Sun*

4/Court of Claims Rule 131(c) provided for separate determination of liability, and permitted the trial court to reserve determination of the amount of recovery "for further proceedings," and for the parties to be allowed to attempt to agree on the amount. Subparagraph (c)(2) also provided: "If the parties are unable to agree on the amount of recovery, this issue shall be disposed of in accordance with the rules covering pretrial procedures, trial, exceptions, briefs, and argument." Thus, at least in its explicit terms, Rule 131(c) would have appeared to permit the raising of new issues (issues that might require new evidence and a new trial), after the trial and decision on the merits.

*First* decision. The Government had not raised the AMT in its answer, and did not move for leave to amend the answer. In the briefing on the computation issue, plaintiffs, *inter alia*, challenged the Government's characterization of the AMT issue "as resulting from a computational adjustment, and argue[d] that it is, in fact, a new issue which cannot be raised at the computation stage." 2 Cl. Ct. at 531. After discussing *Lewis v. Reynolds* and *Dysart*, and rejecting the contrary result reached in a similar district court case (*May v. United States*, 43 A.F.T.R. 2d ¶ 79-315 (E.D. Ky. 1978), *rev'd on other grounds*, 644 F.2d 578 (6th Cir. 1981)), the Court concluded that the AMT issue was computational and could be raised for the first time during the computation stage (2 Cl. Ct. at 532-33):

> In order to calculate the refund due plaintiffs in this case as a result of the 1982 decision affecting the 1973 tax year, ascertainment of plaintiffs' income tax liability for 1973 was impacted by the existence of the deduction for estate taxes under I.R.C. § 691(c) resulting from the 1979 Court of Claims decision. While *Lewis v. Reynolds* has never been interpreted to countenance the untimely amendment of pleadings to assert new claims, the Supreme Court's vintage decision fairly can be construed to allow adjustments–with respect to the same taxpayer, year, and tax–of a purely computational nature resulting from a court-ordered remand requiring the recomputation of taxable income or income tax imposed. That defendant asserted the computational adjustment solely in the remand phase is not, under *Lewis v. Reynolds*, grounds for working a forfeiture.[FN2][5]

Thus, the Claims Court implicitly reached a result that is consonant with the case law interpreting Tax Court Rule 155.

3. Application of the principles discussed above to this case. There can be no question that the AMT offset in this case is an automatic computational, or mathematical, adjustment that is mandated by Code § 55 and "triggered" by this Court's decision on the merits,

---

5/In n.2, the Court quoted the following guidance in *Disabled American Veterans v. United States*, 704 F.2d 1570, 1572-72 (Fed. Cir. 1983) (footnote omitted):

> Most important, the remand to the trial court generally charged that court to determine the exact amount of recovery. In so doing, the Court of Claims instructed the trial court to make a just and lawful calculation, considering all other factors it deemed relevant. One obviously relevant consideration was the proper amount of deductions. The Claims Court was therefore bound to consider deductions and to calculate them accurately regardless of who suggested the particular method used. . . . The days are long gone when technical rules of pleading could be used to force a court to arrive at a result contrary to recognized fact or law.

and that, as such, it may be raised for the first time in this stage of the proceedings. As demonstrated in our motion for reconsideration, plaintiff does not dispute the computation itself, but only contends that the AMT should not apply at all. Thus, as is also abundantly clear from the cases cited above, there is no need for new evidence or a new trial on this issue.[6] For that reason alone, there is no "prejudice" to plaintiff from application of the AMT offset.

Concomitantly, there is no need for new evidence or a new trial with respect to defendant's equitable recoupment defense–a legal issue that, as demonstrated in our motion for reconsideration, plaintiff has impliedly recognized as inextricably entwined with the offset defense. As the Tax Court held in *Buchholtz*, "it is entirely appropriate for us, in the Rule 155 proceeding herein, to consider all the issues raised concerning such interest, since *such issues involve pure questions of law and are inextricably intertwined* with the proper amount to be entered as a decision herein." (Emphasis added.) As analogous to Tax Court Rule 155(b), the parties should simply be permitted to present argument, on brief, on the legal issue of the applicability of the doctrine of equitable recoupment to this case.

Respectfully submitted,

February 9, 2007

s/ Mary M. Abate

MARY M. ABATE
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6507

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief

6/Thus, we respectfully state that we are unable to comply with the Court's direction that we indicate when we would be prepared to conduct a trial, should the Court grant our motion.

February 9, 2007

s/ Steven I. Frahm
Of Counsel